(131 So. 9)
### WURTZBURGER v. OGLESBY.
### 6 Div. 449.

Supreme Court of Alabama.
April 10, 1930.

Rehearing Granted Oct. 30, 1930.

Further Rehearing Denied Dec. 11, 1930.

Nesbit & Sadler, of Birmingham, for appellant.

Benners, Burr, McKamy & Forman, of Birmingham, for appellee.

BOULDIN, J.

Plaintiff, desiring to go from Birmingham to Montgomery, called a friend to know if he was going to Montgomery. This friend informed her he was not, but that he had a friend, the defendant, who was going in his car. This mutual friend called defendant, a stranger to plaintiff, asking on her behalf, that she might go with defendant, who politely agreed. Accordingly, at the appointed place, defendant took her aboard the car and proceeded on the trip. While en route, both parties riding in the car, operated by defendant's chauffeur, a collision occurred resulting in alleged personal injuries for which plaintiff sues.

The inquiry is: Was plaintiff a passenger in the car to whom defendant owed a duty of ordinary care, or was her relation such that defendant owed no duty save not to wantonly or willfully injure, the same duty owed to every person, even a trespasser?

The liability of the owner and operator of an automobile for private purposes to one whom he undertakes to furnish gratuitous transportation therein was first considered by this court in Perkins v. Galloway, 194 Ala. 265, 69 So. 875, 876, L. R. A. 1916E, 1190.

Quoting with approval an English case, saying: "No doubt, a person who undertakes to provide for the conveyance of another is responsible, although he does so gratuitously," this court, speaking by Mr. Justice Thomas, continues:

"This rule has been extended by many cases to one not a common carrier, who voluntarily undertakes to transport another, and makes such voluntary carrier responsible for injury to the person transported resulting from negligence, whether the service was for a compensation or was gratuitous," citing many cases.

Defining the measure of duty, it was said:

"The express or implied duty of the owner and driver to the occupant of the car is to exercise reasonable care in its operation not to unreasonably expose to danger and injury the occupant by increasing the hazard of that method of travel. He must exercise the care and diligence which a man of reasonable prudence, engaged in like business, would exercise for his own protection and the protection of his family and property—a care which

must be reasonably commensurate with the nature and hazards attending this particular mode of travel. Reaves v. Maybank, 193 Ala. 614, 69 So. 137. Failing in this duty, he will be liable to the occupant or guest in the car for injuries the result of such carelessness or lack of diligence."

The complaint in the Perkins-Galloway Case charged the plaintiff was a passenger. So, the court proceeded to define "passenger" as applied to the evidence in that case wherein plaintiff was an invited guest. On this point, we again quote:

"The rule in this state defining who are passengers and the liability of the carrier thereto is thus stated by Mr. Justice Somerville, in Lawrence v. Kaul Lumber Co., 171 Ala. 300, 55 So. 111: 'But, if the carrier is not a common carrier of passengers, and has not expressly contracted to carry in the particular case, a person entering upon its train and taking passage thereon might be, under various circumstances, either a passenger, a licensee, or a trespasser. If his presence is without the knowledge and consent of anyone in charge of the train, he is but a trespasser. If on the invitation, or with the knowledge and acquiescence, of such an agent, not authorized nor shared in by his principal—the carrier itself or its alter ego—such person would be but a licensee. * * * If on the invitation, express or implied, of the carrier or its alter ego manager, or of any authorized agent, such person would be a passenger. * * * In the last instance he could recover of the carrier for injuries suffered while a passenger and proximately caused by the simple negligence of the carrier; while in either of the other instances he could recover under a proper complaint only for the wanton negligence or willful wrong, * * * including its failure to exercise due care to avert injury after the danger was apparent. McCauley v. Tenn. Co., 93 Ala. 356, 9 So. 611.' "

Note that the several alternatives thus quoted from the Kaul Case are expressly limited to cases in which the owner "has not expressly contracted to carry in the particular case." The Kaul Case had already dealt with the case of an express undertaking for gratuitous carriage, by one not a common carrier, in the following language:

"It is also well settled that the person transported is none the less a passenger, because he pays nothing for his carriage, or because he rides for his own convenience solely, by the courtesy of, and absolutely without profit to, the carrier. 5 A. & E. Enc. Law, 507; 1 Am. & Eng. Ann. Cas. 451, note; Indianapolis Traction Co. v. Klentschy, 167 Ind. 598, 79 N. E. 908, 10 Ann. Cas. 869; Harvey v. Deep River Logging Co. (1907) 49 Or. 583, 90 P.

501, 12 L. R. A. (N. S.) 131. The essential requirement seems to be only that the passenger is accepted as such—that is, for transportation by the carrier; the trust and confidence thereby induced, on considerations of public policy, imposing upon the carrier the duty to reasonably safeguard, and not negligently injure, the person so carried."

In both the Perkins and Kaul Cases an invited guest, express or implied, is declared a passenger. The invitation, when accepted, establishes a relation wherein the carrier undertakes to transport, takes into his keeping the person of the other, the equivalent of an express agreement so to do.

These cases further declare that the owner and operator of a vehicle owes no duty to an occupant who is a mere licensee, except not to injure him wantonly or wilfully, nor after discovery of his peril.

When is the occupant a mere licensee under these cases?

"If on the invitation, or with the knowledge and acquiescence, of such an agent [one in charge of the vehicle], not authorized nor shared in by his principal—the carrier itself, or its alter ego—such person would be but a licensee." Lawrence v. Kaul Lumber Co., 171 Ala. 306, 55 So. 111, 113. In such case the occupant is an utter stranger to the owner; he enters the car to make use of another's property, a moving vehicle, for his own convenience, without any undertaking by the owner to furnish gratuitous transportation. Accordingly, pleas alleging the occupant "voluntarily, of his own free will and accord, without invitation from the defendant, * * * boarded the car on which he was riding," were held prima facie sufficient.

This in no way negatives other parts of the opinion dealing with an express undertaking to transport; neither does it declare that one boarding the car pursuant to prearrangement, by which the car is made available by the owner for that purpose, is not in the car by invitation in such sort as constitutes him a passenger.

The licensee doctrine was stated and applied in McCauley v. Tenn. Coal, Iron & Railroad Company, 93 Ala. 356, 9 So. 611, 612.

In that case defendant was not a common carrier, but running a work train. There was a rule, known to plaintiff's intestate, that no one, other than company employees, should ride upon the train without permission of defendant's superintendent. Plaintiff's intestate, not such employee, with others, was in the habit of boarding and riding upon the train. Some evidence tended to show knowledge of this custom on the part of defendant's superintendent. The ruling is summed up in the following words:

"Not having permission of the superintendent, the knowledge and acquiescence of the superintendent that he rode upon the train, availing himself of this means of transportation for his own convenience and comfort, was at most a mere license in which the licensee assumed all risk of the carriage, except such as might result from wanton or intentional wrong, or a failure to exercise due care to avert the injury after his danger was apparent,—a duty imposed upon all persons and corporations under similar circumstances, in view of the great value of human life and limb.

It is manifest the doctrine of respondeat superior is given influence in the case. It may be implied that if, on application, the superintendent had issued a permit as per the authority with which he was clothed, the case would be different. Under any construction the court was noncommittal on that question. The case is not authority for the position that one who undertakes the gratuitous carriage of another has no duty growing out of such relation if the undertaking was at the request of the other. The case cites with approval Hutchinson on Carriers, §§ 563, 564, where it is said that though no binding contract of carriage exists, a claim may rest "upon the breach of duty which the law imposes upon every person who undertakes to perform a service for another, whether gratuitous or not, to exercise the degree of care which the nature of the undertaking requires."

Plaintiff's intestate in this McCauley Case was treated as in like position as a licensee upon real estate, one having a mere permissive use of the property of another for his own convenience.

We cannot escape the view, generally adhered to throughout the country, that there is a distinct difference between such cases, and cases where the owner undertakes to transport a human being in an automobile over which such occupant has no control, and whose careless operation is attended with obvious danger.

Crider v. Yolande Coal & Coke Company, 206 Ala. 71, 89 So. 285, is relied upon to bring the instant case within the licensee doctrine. The facts of that case are fully set out in the opinion by Mr. Justice Sayre. They are widely different from the present case, as sufficiently appears from the comment of Justice Sayre in the later case of Thomas v. Carter, 218 Ala. 55, 60, 117 So. 634, 638, saying: "In that [Yolande] case the plaintiff was on defendant's truck, not by invitation of the owner, nor indeed by the invitation of the driver of the truck, but merely by the tolerance of the driver." We do not construe that opinion as holding that a "passenger" does not include one being transported gratuitously by the owner of a car pursuant to a voluntary agreement that he shall do so.

Reed v. Ridout's Ambulance, 212 Ala. 428, 102 So. 906, is further relied upon as applicable to the instant case. The controlling question in that case, as pointed out in Thomas v. Carter, supra, was governed by the law of master and servant, especially the fellow-servant doctrine.

It was held that a complaint charging that plaintiff was riding in an ambulance of defendant by and with the consent of defendant showed plaintiff a licensee merely.

This was said by Mr. Justice Somerville sustaining the ruling of the trial court on demurrer, the count being taken most strongly against the pleader. Lawrence v. Kaul Lumber Co., supra, written also by Justice Somerville, is cited.

Nothing in the later case overruled the holding in the Kaul Case, that a custom of permitting persons to ride, known to the owner or his alter ego, may raise an inference of an implied invitation.

We see no reason to reconsider any of our cases on the licensee doctrine, nor its application to such cases. None of our cases asserting that doctrine deals with a case where the owner has voluntarily entered into the relation of a gratuitous carrier, undertaking to transport another from one place to another.

To say such relation and the duty of ordinary care growing out of it depends on who initiated the negotiations is to place the duty of care on a wrong basis. Everywhere the sacredness of life and limb is the declared basis upon which the law imposes a duty of care.

Merely because one asks for a favor of this sort, often called a self-invited guest, cannot, we think, give him the same legal status as a wrongdoer, a trespasser who boards a car and rides without even the consent of the owner or any one authorized to consent, for him. Even that sort of person is protected by law against wanton or willful injury. Perkins v. Galloway, 194 Ala. 265, 69 So. 875, L. R. A. 1916E, 1190, is a leading case often cited by courts and text-writers, and followed by a series of notes in L. R. A. 1916E, 1193; L. R. A. 1918C, 276; 20 A. L. R. 1014; 26 A. L. R. 1425; 40 A. L. R. 1338; 47 A. L. R. 327; 51 A. L. R. 581.

On the second appeal (Galloway v. Perkins, 198 Ala. 658, 73 So. 956), the court, by Mr. Justice Mayfield, states and approves the doctrine of the former decision in these words:

"1. One not a common carrier, who voluntarily undertakes to transport another, is responsible for injury to the person transported resulting from negligence, whether the service was for compensation or was gratuitous."

If plaintiff is to be regarded as a mere licensee, we must add to these quoted words a proviso to this effect: "Provided he does not undertake to transport such person at his request," or "provided, that one who transports another at his request does not voluntarily undertake so to do."

Justice Mayfield takes occasion to call attention to the law as to the gratuitous carrier of goods, the same as a bailee for the sole benefit of the bailor. It happens in this state that as to such bailment, the term "gross negligence," or "want of slight care," has been retained as defining the liability of the bailee. Bain v. Culbert, 209 Ala. 312, 96 So. 228; Thomas v. Hackney, 192 Ala. 27, 68 So. 296; Haynie v. Waring & Co., 29 Ala. 263.

"Gross negligence," unless otherwise shown by the context, is not the equivalent of "wantonness."

We call attention to this state of our law merely to illustrate that if plaintiff is only entitled to protection against wanton injury, then it may happen that if a person request gratuitous transportation for himself and also for a basket of apples, the gratuitous private carrier may be liable for the injury to the property, but not for injury to him, although he committed his person to the keeping of the carrier as fully as he did the property.

This is directly opposed to the rule of common carriers. The higher duty, there, is to the person gratuitously carried, and that because of the sacredness of life and limb, in the eyes of the law. Galloway v. Perkins, 198 Ala. 658, 73 So. 956.

On fuller consideration, we have reached the conclusion that our former decisions do not commit us to the conclusion reached in our original opinion, but in effect such decision would extend the licensee doctrine in such way as to run counter to Perkins v. Galloway, and the great weight of authority elsewhere. The affirmative charge for defendant was properly refused. We find no error to reverse in other rulings presented for review.

Former opinion withdrawn, rehearing granted, judgment of reversal set aside, and judgment of the court below affirmed.

All the Justices concur.