160 So. 257

**ARMISTEAD v. LENKEIT et al.**

4 Div. 805.

Supreme Court of Alabama.

March 21, 1935.

L. A. Farmer and F. M. Gaines, both of Dothan, for appellant.

T. E. Buntin, of Dothan, for appellees.

BOULDIN, Justice.

Action for personal injuries. The trial court gave the affirmative charge, with hypothesis, for defendants; hence this appeal.

The complaint charged "on or about the 4th day of October, 1931, the defendant was operating an automobile on a public highway in the State of Georgia, between Atlanta and Columbus, and near the town of Hamilton, and plaintiff was riding in said automobile as a passenger for hire; that at said time and place the defendant so negligently operated, managed or controlled said automobile as to cause the same to suddenly swerve in said highway and throw plaintiff therefrom to the ground, severely injuring plaintiff." Alleged injuries are then set out.

The pertinent evidence was as follows:

The parties lived in Dothan, Ala. Plaintiff says: "Mr. and Mrs. Lenkeit came out to our house and Mrs. Lenkeit said that she was going to Atlanta. I said 'I am going in the morning on the bus.' I asked her how she was going and she said in a car. She said 'you can go with me.' I said 'how much will you charge,' and she studied a little while, then asked me what the bus fare was. I told her I·did not know. She said just pay for the gas and oil which would amount to about what the bus fare would be. She said she would take me if I would pay her for the amount of gas and oil that we used. That conversation took place on Saturday evening, October 3rd, 1931, on my front porch. She called by the next morning and got me."

They proceeded on their journey; plaintiff purchasing the gas and oil for the trip. The accident occurred on the paved highway between Columbus and Atlanta.

Plaintiff says: "The first thing I knew Mrs. Lenkeit screamed and the car swerved to one side. She slammed on the brakes, and the door flew open. I fell out of the car and hurt my back and fractured my leg. At the time the brakes were thrown on, and at the time I was thrown out of the car the car was just about off the highway. I hit the ground and the side of the car too. At the time of this injury, or at the time the car was stopped we were going about forty-five or fifty miles an hour. The first thing I knew after I was injured I was up just about the front of the car and Mrs. Lenkeit was down over me blowing in my face. * * * She told me she would take me to Kirkwood. Kirkwood is about five miles from Atlanta, and about ten miles from East Point."

On cross-examination plaintiff said: "The first thing I.noticed Mrs. Lenkeit screamed. The car was not on fire at that time. The car did catch on fire. She slammed on the brakes, and the car went one sided. She was driving the car at that time about forty-five or fifty miles an hour. There was nothing in front of the car at that time. She was traveling on the right hand side of the road. Up to the time the brakes were put on, we were just riding along, forty or fifty miles an hour, and were talking. Just before the brakes were applied Mrs. Lenkeit screamed. She applied the foot brakes. I did not see her apply the hand brakes. When the car came to a stop the right side of the car was off on the shoulder of the road. The front part of the car was nearer to the ditch than the back part. Mrs. Lenkeit threw up her hands just after she screamed. That was just about the time the car stopped. The door flew open when she jerked on the brakes, and I fell out of the car at the same time.' The car was running a little bit when I fell out. * * * I don't know how fast the car was going when I hit the ground, but it was still rolling. Mrs. Lenkeit threw up her hands. I don't know whether she put her hands back on the steering wheel or not. I did not notice any fire back there before I got out of the car, but I did notice smoke. * * * Just before I got out of the car I saw smoke. The smoke was coming up in the front of the car. I did not look back to see where the smoke was coming from. I had fallen out of the car just about when Mrs. Lenkeit screamed. The first thing I noticed Mrs. Lenkeit screamed and threw up her hands. I turned around and when I did I fell out of the car. We were sitting in the car talking. She slammed on the brakes and I fell out. I just straightened up in the seat and did not turn at all. I turned my head around to the right, towards the door away from Mrs. Lenkeit. The door came open as Mrs. Lenkeit slammed on the brakes, about the time she screamed. I turned my head to the right, facing the door. Just about the time Mrs. Lenkeit applied the brakes the door flew open. * * * Mrs. Lenkeit applied the brakes a very short time after she screamed. The car traveled just a little way after the brakes were applied. Immediately after I turned to the right and was looking in the direction of the door the brakes were applied. When the brakes were applied I was looking at Mrs. Lenkeit. At that time her hands were in the air. From the time she put on the brakes she did not take her hands down out of the air."

Mrs. Lenkeit, defendant, gave a different version of certain details of the accident. According to her statement, she brought the car to a stop on the appearance of fire; that plaintiff was not thrown out, and did not get out until after the car came to a full stop, when plaintiff reached back toward the back seat for a purse; the car then being full of smoke, plaintiff hurriedly backed out or fell out in a fainting condition; that defendant caught her in time to prevent her head from striking the ground.

■ We are not concerned with these conflicts in the evidence in dealing with the affirmative charge, but with the tendencies of evidence most favorable to plaintiff. Without dispute, the car did catch on fire and later burned up. That the appearance of smoke, a sudden discovery of probable danger from fire, led to the bringing of the car to a stop, is without conflict. For purposes of the inquiry before us, we accept plaintiff's contention that it was a quick, emergency stop; that the door flew open; that the driver screamed and threw up her hands; that the car swerved to the right and came to a stop with the right side thereof off the pavement on the shoulder of the road; that plaintiff was thrown out as the car came to a stop.

Does such evidence prove negligence, or afford a reasonable inference of negligence proximately causing plaintiff's injury?

The alleged tort having been committed in the state of Georgia, appellees insist the case is governed by the laws of Georgia, and that under Georgia law there can be no recovery except for gross negligence. The case of Harris v. Reid, 30 Ga. App. 187, 117 S. E. 256, was offered in evidence, and the entire report of the case set out in the record.

That decision, as several other Georgia cases, discloses that the courts of Georgia, as of some other states, hold: " 'One riding by invitation and gratuitously in another's automobile can not recover for injury caused by the other's negligence in driving, unless it amounted to gross negligence.' Epps v. Parrish, 26 Ga. App. 399, 106 S. E. 297; Harris v. Reid, 30 Ga. App. 187 (1), 117 S. E. 256; Peavy v. Peavy, 36 Ga. App. 202, 136 S. E. 96." Blanchard v. Ogletree, 41 Ga. App. 4, 152 S. E. 116, 117.

■ Gross negligence is defined as a want of slight care, as distinguished from ordinary care, on the one hand, and less culpable than wanton injury, on the other.

Appellees insist the instant case is governed by the same rule as a gratuitous guest. The Georgia decision offered in evidence does not so hold.

In Massachusetts the gross negligence rule applies to gratuitous guests as in Georgia. In Lyttle v. Monto, 248 Mass. 340, 142 N. E. 795, defendant, a driver of a truck, invited a small boy to get on the truck and show the driver the location of a certain shop some distance away. Held, the boy's presence being upon invitation, and for the defendant's benefit, the boy was entitled to the exercise of reasonable care.

■ Obviously, an arrangement by which the car owner agrees in advance to transport another on a trip, which both wish to take, each contributing thereto, one by furnishing the car and driving it, and the other furnishing gas and oil, does not impose on the driver the degree of care required of a common carrier of passengers. Neither does it impose the same obligations as a private carrier for hire, save in so far as like duties arise from the intendments of the relation.

There is, however, a contractual relation in the instant case; one in which a service is promised for a consideration. For illustration, there was a duty to carry the plaintiff to Kirkwood, whether or not this was on defendant's line of travel in making her trip.

■ In the absence of evidence of the Georgia law applicable to this situation, we hold, on principle, defendant owed the plaintiff the duty of ordinary care, that care which persons of common prudence usually exercise under like conditions. True, this is the degree of care due a gratuitous passenger under our law. We think the relation in the instant case imposed no higher duty than ordinary care. The basis of liability in either case is the obligation of one person who has undertaken to carry another, whose person is committed to his keeping, not to negligently injure such person. Wurtzburger v. Oglesby, 222 Ala. 151, 131 So. 9. But we cannot assume that a state where gross negligence only imposes liability to a gratuitous passenger would class this case as such.

■ Now in dealing with the special conditions here presented, we observe that a private carrier, engaged in the business of transporting persons for hire, has the duty to exercise reasonable care to see that the vehicle is safe, and, if defective, to exercise due care, in view of any dangers arising from the operation of same.

This rule does not apply to the instant case. The intendment was that plaintiff should be

.carried in the car owned and under the control of defendant, a car in which she proposed to travel.

Negligence in operation, and not negligence because of defects in the car, is the basis of this suit. But we have in mind that negligence in operation may arise from want of ordinary care in operating a defective machine. In a case like this such defect must be known.

■ We are of opinion no special duty to have the machine in good condition appears in this case; and any defect in the machine which may have led to this accident is not chargeable to defendant as affecting the duty of care in its operation, in the absence of evidence of knowledge of such defect. Huddy, Automobile Law (9th Ed.) vol. 5-6, p. 221, § 131.

■ Coming to the question of causal negligence, a want of ordinary care, in this case, we observe the evidence that the car and its occupants were in immediate peril from fire is without dispute. It follows there was no negligence in bringing the car to a quick stop, an emergency stop, by applying the foot brakes.

■ If, as plaintiff testifies, the defendant screamed and threw up her hands, losing control over the steering wheel, a jury question might arise whether such panicky action evidenced a lack of ordinary care, even in emergency.

But this is unimportant; if screaming and throwing up her hands had no causal connection with plaintiff's injury.

Under plaintiff's evidence the door flew open and she was thrown out by the sudden application of brakes, and maybe by swerving of the car. But her own testimony shows the car swerved to the right and came to a stop with the right side off the pavement on the shoulder. This was the position in which a car coming to a stop on a paved highway should be placed under the general law of the road. If, therefore, defendant did throw up her hands and lose control, as plaintiff claims, it further appears this in no way contributed to the accident.

There was no error in the court's ruling.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.