156 So.2d 484

**James Clellon STOREY**

v.

**Wilburn J. CORKREN.**

**6 Div. 820.**

Supreme Court of Alabama.

May 9, 1963.

Rehearing Denied Sept. 26, 1963.

Brobston & Brobston, Bessemer, and Richard L. Jones, Birmingham, for appellant.

Rives, Peterson, Pettus & Conway, Birmingham, for appellee.

PER CURIAM.

The issue here for judicial determination is whether or not the trial judge in the circuit court of Jefferson County erred in giving for the defendant a general charge without hypothesis because the plaintiff failed to establish by the scintilla rule of evidence, or otherwise, that one Mr. Grimes was an agent, servant or employee of defendant in the operation of an automobile occupied by plaintiff and other passengers on a share expense basis. The driver, Grimes, allegedly was guilty of negligence in the operation of said automobile, causing it to collide with another automobile on Georgia Road in the City of Birmingham, proximately resulting in injuries to plaintiff which are catalogued in the complaint.

The jury, responding to the mandatory charge of the court, returned a verdict for defendant. The court pronounced judgment for the defendant, which was entered on the minutes of the court. From this judgment plaintiff here appeals.

It appears from the evidence of plaintiff (the defendant offered no evidence) that for several months prior to the collision (excepting a short interruption), plaintiff had been riding with the defendant, along with others, to and from work at Hayes Aircraft Corporation, on a share the expense agreement, plaintiff paying to the defendant for such service the sum of $4.00 per week, while the other occupants also paid for their rides in amounts which are not disclosed by the evidence.

Defendant in providing transportation usually used his own automobile. The defendant and all the occupants were, during the period of these rides, employed at Hayes Aircraft Corporation.

On the day of the collision it appears from plaintiff's evidence that defendant's automobile, the one he had been using for transporting the passengers to and from work, was immobilized, due to faulty brakes, and all occupants were riding in Mr. Grimes' automobile, with Mr. Grimes doing the driving.

During the trial, plaintiff's attorney propounded to him a question as follows:

"Q. All right now, when you got in the car, I will ask you whether or not anything was said by you or any other party in Mr. Corkren's presence with reference to the different automobile?

Plaintiff thereupon answered the question as follows:

"A. I just asked Mr. Grimes, conversationally, what he was doing driving on this day. Mr. Corkren said, well, his brakes had gone out on his car, so he got Mr. Grimes to drive for him, carry us to work."

On cross-examination plaintiff gave substantially the same evidence that he did as above noted on direct. We think the answer was of the same import.

The question arose in the mind of the trial judge as to what was the relationship between Mr. Grimes and the defendant at the time of the collision. The trial judge made a statement as follows to the jury when he gave the mandatory direction to return a verdict for the defendant.

"I will state this to you; it was the court's view there was no agency proven, there's no relationship of master and servant."

We may state here that the defendant pled in short by consent with privileges and limitations usually present in such an agreement.

The question arises as to the original relationship of plaintiff and defendant while the latter was using his own automobile. Did that relationship continue or change when the automobile of Mr. Grimes was pressed into service, according to the evidence, at the invitation of defendant?

We have held in the case of Crescent Motor Company et al. v. Stone, 211 Ala. 516, 101 So. 49(3), quoting with approval from Cunningham v. Thief River Falls, 84 Minn. 21, 86 N.W. 763, as follows:

"Parties cannot be said to be engaged in a joint enterprise, within the meaning of the law of negligence, unless there be a community of interest in the objects or purposes of the undertaking, and an equal right to direct and govern the movements and conduct of each other * * *."

In 65 C.J.S. Negligence § 168c, p. 813, we find the same yardstick is suggested, with cases cited, to determine the existence vel non of an agreement of joint enterprise. There must be an equal right, express or implied, to direct and control the conduct of each other in the operation of the conveyance. The fact that the occupants shared expenses with the driver may be considered along with other factors whether a joint enterprise existed, but that fact alone will not make the arrangement a joint enterprise.

If the arrangement between the riders in the automobile owned by the defendant was one of joint enterprise, we think the case of Day v. Downey, 256 Ala. 587, 56 So.2d 656, would be decisive. In that case Day, Dunn and Downey were riding in an automobile owned by Day, but operated by Dunn. As a result of the negligence of Dunn in the operation of Day's automobile, both Dunn and Downey were killed. Downey's administrator brought suit against Day, the owner of the automobile. It was in effect conceded that the men were engaged in a joint enterprise. The court phrased the question concisely when it stated:

"Can a coadventurer at the same time be also the agent or servant of one of them so as to make the latter responsible to a third coadventurer on the principle of respondeat superior?"

The court then answered the question in the negative as follows:

"* * * But there is nothing on which to base a conclusion that if Dunn was driving, he was not doing so as a joint adventurer on an enterprise which had begun as such, and the only change in that respect, if there was a change, was that Dunn was driving when the accident occurred, whereas Day had been driving. That circumstance did not shift Dunn's relationship in the enterprise from a joint adventurer to an agent of Day so as to make Day liable for Dunn's act of wantonly

[sic] causing Downey's death. They were joint adventurers all the while, and as to each other that relationship did not make one of them liable for injuries to another caused by the wrongful act of the third."

If a joint enterprise existed prior to and on the day of the accident, a mere substitution of Grimes' automobile for that of defendant as here, and a switch of drivers, would not shift Grimes' relationship in the enterprise from a joint adventurer to an agent of Corkren, the defendant.

But if a joint enterprise between the riders in the case at bar did not exist—a question of fact for the jury under the evidence—then there must have been some other relationship between Corkren, the defendant, and his riders. It is undisputed that he was receiving some monetary remuneration from all the riders for the use of his automobile. Although an inference can be drawn that he was not carrying the riders to and from work for a profit, it cannot be ruled out that he was getting a reward and benefit in the form of reduced expenses for operating his automobile to and from work which he himself was performing.

■ We think it is for the jury to say whether or not the defendant, taking into consideration all the facts and circumstances as shown by the evidence, was operating his automobile prior to the day of the accident under a contract of hire, express or implied, the consideration being a reduction in expenses by payment on the part of the riders of weekly sums. Or was it an arrangement constituting a joint enterprise?

If the original arrangement between defendant and his riders was one of hire or a contract of carriage, whereby plaintiff and the other riders were paying a weekly consideration for the service, without the right to exercise any control over the operation of defendant's automobile, it is a question for the jury under plaintiff's and other testimony as to whether or not the contract of service continued in full force and effect by the use of a substituted automobile and driver, even though the substituted automobile belonged to the substitute driver.

It is said in 2 Am.Jur., Agency, § 23, p. 25:

"As between principal and agent, the creation of the agency relationship arises from the consent of the parties. It is not essential that any actual contract should exist or that compensation should be expected by the agent, and while the relation, in its full sense, arises out of a contractual or gratuitous agreement between the parties, yet the agency and the assent of the parties thereto may be either express or implied.

" * * * An implied agency is also an actual agency; it is a fact which is to be proved by deductions or inferences from other facts and circumstances. It is often established from the words and conduct of the parties and the circumstances of the particular case. For example, an agency may be implied from prior habits or from a course of dealings of a similar nature between the parties, especially where the agent has repeatedly been permitted to perform similar acts in the past. But when the agency is implied, the relation must be determined from all the facts and circumstances." It is further stated (§ 24):

"Whether an agency has in fact been created is to be determined by the relations of the parties as they exist under their agreements or acts. If relations exist which will constitute an agency, it will be an agency whether the parties understood the exact nature of the relation or not. * * *"

In the instant case, Grimes and defendant, according to the evidence, were parties to an arrangement for the transportation of all the riders to and from work for a con-

sideration. If the arrangement was one of contract for hire made between defendant and the riders, Grimes was informed thereof and knew the contractual obligation of defendant to provide the transportation; he knew when he consented to use his automobile and to do the driving that it was in furtherance of the contractual arrangement. Likewise defendant, being a party to the contract of hire, if the facts and circumstances justify this conclusion, realized the need of meeting his contractual obligation to provide transportation on the day of the accident for his riders.

The jury could well conclude from all these facts and circumstances that defendant and Grimes entered into an express or implied contract that Grimes and his automobile were to be the means of executing the contract on that day, and that Grimes was a gratuitous agent of defendant in such contractual performance.

Plaintiff testified that defendant said, "he got Grimes to drive for him." The word "got" should not be taken out of context and construed solely in the light of the multiple definitions given in Webster's Dictionary. The jury in the light of all the surrounding facts and circumstances adduced by the evidence may determine the meaning of this word and the purpose of its employment.

■ It is axiomatic that the only justification for a directed verdict is when the testimony will support no other, and if there is a scintilla of evidence or reasonable inference therefrom adverse to the party requesting it, the same should be refused. Patterson v. Seibenhener, 273 Ala. 204, 137 So.2d 758.

Because of the error of the court in directing a verdict for the defendant, the judgment of the court is due to be reversed and remanded. It is so ordered.

The foregoing opinion was prepared by B. W. Simmons, Supernumerary Circuit Judge, while serving on the Supreme Court at the request of the Chief Justice and was adopted by this court as its opinion.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON, GOODWYN and COLEMAN, JJ., concur.

On Application for Rehearing.

PER CURIAM.

It is not intended by using the words "contract of hire," in this opinion, or by employing words of like import, to place the service rendered in the category of that rendered by a common carrier, but only to say that the service was in the nature of that rendered by a private carrier, but not necessarily including all the intendments and contractual obligations of such a carrier. It was a private arrangement that could be terminated at any time by either of the parties without contractual liability to answer in damages.

■ As stated in Armistead v. Lenkeit, 230 Ala. 155, 160 So. 257(4), we hold, on principle, if the transaction was not a joint venture, that the defendant owed the plaintiff the duty of ordinary care, that care which persons of common prudence usually exercise under like conditions. When Armistead v. Lenkeit, supra, was decided, it was the degree of care due a gratuitous passenger under our law then in force. Wurtzburger v. Oglesby, 222 Ala. 151, 131 So. 9(2). We think the relation in the instant case imposed no higher duty than ordinary care. The basis of this liability in either case is the obligation of one person who has undertaken to carry another, whose person is committed to his keeping, as here, not to negligently injure such person.

Opinion extended and application for rehearing overruled.

LIVINGSTON, C. J., and LAWSON, GOODWYN, MERRILL, COLEMAN and HARWOOD, JJ., concur.