# CHARLESTON.

PERRY, ADM'R. *v.* OHIO VALLEY ELECTRIC RAILWAY CO.

Submitted January 17, 1911.   Decided April 23, 1912.

1. ELECTRICITY—*Negligence of Distributing Company—Liability of Generating Company.*

   There is no obligation upon a generating company, that sells and delivers electricity to a distributing company, to see that the lines of the latter company, over which the current is to be carried to the consumer, are in safe condition.  The former is not liable for the negligence of the latter.  (p. 698).

2. CORPORATIONS—*Same. Officers and Employes—Liability for Negligence.*

   It is not to be inferred that two corporations are in legal effect one and the same, so as to make one liable for the negligence of the other, simply because they have the same men as officers, employ the same laborers and apportion between themselves the charges therefor.  (p. 699).

Error to Circuit Court, Cabell County.

Action by John W. Perry, Administrator, etc., against the Ohio Valley Electric Railway Company.  Judgment for plaintiff, and defendant brings error.

*Reversed and Remanded.*

*Vinson & Thompson,* for plaintiff in error.

*Isbell & Perry,* for defendant in error.

WILLIAMS, JUDGE:

Plaintiff recovered a judgment for $6,000 against defendant for alleged negligence in causing the death of his intestate; and defendant has brought the case here on writ of error.

Merrill Perry, plaintiff's intestate, a boy eleven years old, was killed in the following manner, viz: He and a number of other boys were playing in one of the streets of the town of Guyandotte, near a guy post, or "stub", to which was tied a guy wire supporting one of the poles between which was suspended one of the arc lamps used to light the street.  The stub stood about one foot from the board sidewalk, and the guy wire was

tied around it about seven feet above the walk, and around the top of the electric light pole which was about 28 feet high and stood forty feet away from the stub. The guy wire was fastened around the electric light pole about two inches above the span wire supporting the arc light, and came in contact with it, and, because of lack of insulation between the span wire and the electric light wire, became charged with electricity, and had been so charged for a week or more before the accident. One of the older boys in the group picked up a piece of telephone wire, about eight feet long, lying in the gutter, bent one end of it to form a hook and hung it over the guy wire. The loose end of the wire hung down near the sidewalk, and the boys would amuse themselves by standing upon the sidewalk and touching or catching hold of the wire. The board walk being a very imperfect conductor of electricity, the boys would thus experience only a slight shock. One of the boys on the walk pulled on the wire and then let go of it and it swung away from the sidewalk, and Merrill Perry, who was standing on the ground, caught hold of it and was instantly killed.

Three defenses are set up to the action: (1) That defendant does not own, control, or operate the electric light wire and poles where plaintiff's intestate was killed, and only furnishes electricity to the Consolidated Light & Railway Company, another corporation, that owns and controls the wire and poles in question; (2) that there was an intervening, independent agency, to-wit, the hooking of the loose wire over the guy wire, which was the proximate cause of the injury, and (3) that deceased was guilty of contributory negligence.

The proposition involved in the first point of defense was decided by us in *Fickeisen, Adm'r. v. Wheeling Electrical Co.,* on March 29, 1910, reported in 67 W. Va. 335. The relation, proven in that case to exist between the Wheeling Electrical Company and the Bridgeport Electrical Company, was almost, if not quite, identical with the relation proven to exist in the present case between defendant, the Ohio Valley Electric Railway Company, and the Consolidated Light & Railway Company. In that case John P. Whitney came in contact with a live wire used in lighting the streets in the town of Bridgeport, Ohio, and was killed. In a suit by his administrator against the

Wheeling Electrical Company, it was proven that the Wheeling company generated the electricity, sold and delivered it to the Bridgeport company, at the end of the bridge spanning the Ohio River, and that the latter company owned and operated the poles and wires where deceased was killed. That was the first case in which this Court was called on to decide whether a generating company, that sells and delivers electricity to a distributing company, is liable for the negligence of the latter in failing to keep its own poles and wires in repair. After a careful consideration of that case, and of all the principles which we thought had any bearing upon its proper determination, and the decisions of courts of other states bearing on the question, we held that the selling company was not liable.

In the present case it is proven, and not denied, that the Ohio Valley Electric Railway Company developed the electricity at its generating plant in the town of Kenova, sold and delivered it to the Consolidated Light & Railway Company, by meter, at the former company's sub-station near the city of Huntington; and that it did not own or control the poles and lighting wire which carried the electricity that killed the boy. Unless we reverse our holding in the *Fickeisen Case,* we must reverse the judgment of the lower court in this case.

But it is contended that there is sufficient evidence in the case to justify the jury in finding that the two companies were practically one and the same. We do not think so. True, the evidence does show that they have practically the same officers; that Thomas Hayes is secretary and manager of both companies; that the employes of the Ohio Valley Electric Railway Company performed services also for the Consolidated Light & Railway Company, and were paid partly out of the treasuries of both companies. This, however, is about the same state of facts as existed in the *Fickeisen Case,* and we there held that such facts were not sufficient to prove that the two companies were practically one and the same, or that the Wheeling Electrical Company had assumed the obligation to keep the lines and poles in Bridgeport in proper condition. The Consolidated Light & Railway Company was incorporated in 1892. The Ohio Valley Electric Railway Company is but a continuation of the Camden Interstate Railway Company which was incorporated in 1899,

and changed its name to the name of this defendant in 1908. The two corporations make separate reports to the state. The salaries of the officers, likewise of the employes who serve both companies, are apportioned between them. It does not appear that the stockholders are identical and hold their shares of stock in the same proportion in the two companies. This, we think, is necessary to constitute them, in effect, one and the same corporation. So far as the record discloses, they are separate and distinct entities. Therefore, granting that the evidence is sufficient to prove negligence on the part of the Consolidated Light & Railway Company, a question which we do not decide, still there is no liability on this defendant.

It is unnecessary to enter into an elaborate discussion of the same question which was so recently decided by us in the *Fickeisen Case.* We simply re-affirm our opinion in that case, and adopt the discussion therein made of the question of law, as being applicable here. The other points raised are, therefore, rendered immaterial. The judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and Remanded.*