(132 So. 161)

### OHME et al. v. BISIMANIS.
### 3 Div. 942.

Supreme Court of Alabama.
Jan. 22, 1931.

Rushton, Crenshaw & Rushton, of Montgomery, for appellants.

Hill, Hill, Whiting, Thomas & Rives, of Montgomery, for appellee.

BOULDIN, J.

The action was for alleged personal injury to plaintiff, a pedestrian, charged to the negligence of defendants in striking him with an automobile at the intersection of Adams and Court streets in the city of Montgomery.

The injury complained of was a double hernia resulting from such collision. There was verdict for plaintiff.

Defendants moved for a new trial. Ground No. 3 of said motion reads:

"On account of newly discovered evidence, material to the defendants, which defendants could not with reasonable diligence have discovered and produced on the trial."

The alleged injury was received October 30, 1929. Trial was had on January 30, 1930. Motion for new trial filed February 15, 1930. On the hearing of the motion for new trial, March 15, 1930, movant filed an affidavit of counsel, saying:

"That on, to-wit, the 17th day of February, 1930, Dr. Harry E. Ohme, one of the defendants in the case of Bisimanis v. Ohme, came to his office and told him the following:

"That the said Dr. Harry E. Ohme's brother had recently informed him on, to-wit, Saturday, February 15, 1930, that a patient of his said brother, told him the following facts:

"That upon the date of the trial of the said above mentioned cause he, the said patient, was in the Olympia Cafe in this city; that there were several others in the restaurant at the time and that one Gus, a Greek, who works at the said cafe, asked him the result of the Bisimanis v. Ohme case; that the patient did not know himself at that time the result of the case but informed Gus, to see what he would remark, that the jury had given Bisimanis $10,000; that thereupon the said Gus stated, among other remarks, that he was a room-mate of Bisimanis before Bisimanis married; that Bisimanis had been ruptured for a long time before he married and before the time of the said accident, which he claimed caused the said rupture; that he, Gus, had been with Bisimanis to Dr. T. Brannon Hubbard's office where

Bisimanis was examined by the said Dr. Hubbard for the said ruptures;

"This is the first information affiant had of any of these facts; that thereupon affiant interviewed the said Dr. T. Brannon Hubbard who informed affiant that he examined Dennis Bisimanis on March 25, 1929, and at that time Bisimanis had a double hernia, one on each side, and further informed affiant that his records substantiated this statement; that affiant, together with the said Dr. Hubbard, examined Dr. Hubbard's records and found this to be true;

"That this evidence is material for the defendants in this cause and that defendants, nor their attorneys could have with reasonable diligence discovered and produced the said evidence at the trial."

The record then recites:

"The following stipulation was entered into between counsel for the plaintiff and counsel for the defendants:

" 'It is hereby agreed between the parties that if Dr. T. Brannon Hubbard were present and testifying upon the motion for the new trial he would testify that the records in his office show that he examined one Dennis Bisimanis in his office on March 25, 1929, and that on his examination upon that date he found that Dennis Bisimanis was suffering from double hernia, and that he advised an operation; that he has no independent recollection of these matters.' "

There was sharp conflict on the main trial as to whether the car actually came into contact with the person of plaintiff. His evidence tended to show that he was struck by the moving car, that he held on to the fender, and was carried several feet before the car stopped. Defendants' evidence tended to show that plaintiff's umbrella was caught on the car, and he was not touched or at least was not caught or carried on the fender.

Plaintiff's evidence tended to show he was not ruptured before the accident, and that rupture might result from such accident. Defendants produced no evidence on this issue.

Without dispute plaintiff did have a double hernia thereafter.

It is obvious the newly discovered evidence relates to the most vital fact in the case.

If these disclosures show the facts, they are evidence of a fabricated claim on the part of plaintiff, a frame-up with fraudulent purpose.

■ The point is made that the motion setting up newly discovered evidence is too general. The motion was sufficient to bring that issue within the lis pendens of the motion, and take it without the rule forbidding amendment adding new and distinct grounds for new trial after thirty days.

■ Having gone to a hearing on the motion as it stood, making no objection to evidence offered, nor otherwise calling for an amendment to set up the facts discovered after the original motion was filed, nor asking a postponement to meet the same, but to the contrary stipulating agreed evidence for the purpose of a hearing on the merits, the objection for generality comes too late on appeal.

■ It is true the statement of the Greek, Gus, or what he was reputed to have said, being mere hearsay was not evidence of the truth of his statement. These matters were proper as going to the accidental discovery of facts, which could not reasonably have been anticipated.

■ We think the circumstances and nature of the evidence so discovered sufficient to acquit defendants of want of diligence in not producing such evidence on the trial. Fries v. Acme White Lead & Color Works, 201 Ala. 613, 79 So. 45.

■ The diligence rule will not be severely applied to deny relief against the use of the processes of law for purposes of fraud. 46 C. J. p. 268.

■ It is argued that neither the hospital records, nor their contents, were evidence of the facts. We have copied the stipulation, showing an agreement on Dr. Hubbard's testimony for use on the trial. These records, under well-settled rules in this court, were admissible on proof that the witness knew the facts when the records were made, and knows the records show the true facts, and that the witness has now no independent recollection. Acklen's Executor v. Hickman, 63 Ala. 494, 35 Am. Rep. 54; Sovereign Camp Woodmen of the World v. Screws, 218 Ala. 600, 119 So. 644; 1 Greenleaf Ev. §§ 436, 437.

■ The stipulation as to the testimony of Dr. Hubbard waived a predicate therefor.

■ Intending in no way to intimate the relative strength of the evidence on the respective sides as to any of the issues, we are convinced that the disclosures on the motion for new trial show such probability of truth that the ends of justice demanded the grant of a new trial.

The motion for new trial will be here granted, and cause remanded for new trial.

Reversed, rendered, and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.