143 So. 578

FIRST NAT. BANK OF DOTHAN et al. v. SANDERS.

4 Div. 655.

Supreme Court of Alabama.

Oct. 6, 1932.

H. R. McClintock, of Dothan, for appellants.

C. L. Rowe, of Elba, for appellee.

**BROWN, J.**

This is an action on the case by appellee, brought originally against the First National Bank of Dothan, Morris Malone, and S. H. Brock. Brock died before the trial was entered upon, and the complaint was amended by striking his name as a party defendant.

The case was submitted to the jury under counts 6 and A of the complaint. Count 6 ascribed the plaintiff's injury to the negligence of Brock, the driver of the automobile, while count A ascribed said injury to the wanton or willful conduct of Brock.

The verdict for plaintiff responded to count 6, and rulings relating to count A are not material to the questions presented by the appeal.

Count 6 avers that the defendant First National Bank furnished to its agent Malone the automobile on which plaintiff was riding at the time of his injury, to be used by him, Malone, in "looking after the renewal and collection of divers notes and account * * * and intrusted to the said Malone the said au-

tomobile which it owned * * * that the said automobile was in the complete charge and possession of said Malone, as agent of the said Bank; that he had full authority and dominion over the same and was accustomed to take passengers as his guests therein, all of which the defendant Bank and its officers and agents well knew; that on, to-wit: the 5th day of October, 1929, the said Malone *while acting within the scope of his employment procured the defendant S. H. Brock to drive the said car in and about the business of the defendant First National Bank*, and the said Brock, being in sole control of the operation of the said car, and while driving the same upon a public highway in Coffee County, Alabama, invited and took into or upon the said automobile the plaintiff and another, and thereupon drove the same upon the Enterprise-Elba public highway in Coffee County, Alabama, in such a careless, reckless, negligent and improper manner that the plaintiff was thrown into the roadway and was injured" (cataloguing the injuries) all of which "was the proximate result of the negligence of the defendant Brock who had been procured to operate and drive the said automobile by the said Malone, *acting within the scope of his employment and in furtherance of the business of the defendant First National Bank,*" etc. (Italics supplied.)

Taking the averments of the count as true, but construing them most strongly against the pleader, as must be done on demurrer, it appears that Brock was an agent or servant of the defendant bank to operate the automobile, he having been procured to drive the car by Malone *while acting within the scope of his employment,* yet it does not appear by affirmative averment that Brock was acting within the scope of his employment in inviting plaintiff to ride in or on the automobile.

The plaintiff, therefore, while an invitee or passenger of Brock, was a mere licensee as to the bank, and it was only liable for negligent injury after the discovery of peril, or for wanton or willful injury. Lawrence v. Kaul Lumber Co., 171 Ala. 306, 55 So. 111; Crider v. Yolande Coal & Coke Co., 206 Ala. 71, 89 So. 285, 286; Perry Supply Co. v. Brown, 221 Ala. 290, 128 So. 227; Wurtzburger v. Oglesby, 222 Ala. 151, 131 So. 9.

In Emison v. Wylam Ice Cream Co., et al., 215 Ala. 504, 111 So. 216, cited and relied on by appellee, the truck was propelled against the plaintiff, or against a barrel which was by the force of the truck propelled against plaintiff, resulting in her injury, while being driven by Leroy Pope, to whom White, the driver had committed its operation *without authority to do so*, and there it was held that such use of the truck was the act of White the driver in the prosecution of his master's business. This would seem to rest liability on the doctrine

of respondeat superior, yet some of the utter-ances in that opinion are inconsistent with this idea. See comment 54 A. L. R. 854, note.

The utterances in that case, however, are clearly not applicable to the case of the plain-tiff here, who was not injured by being run upon or against by the automobile, but by be-ing caused to fall from a position which he had voluntarily assumed thereon for his own benefit, and, so far as appears in the count, at the invitation of one who had no authority to invite him, "assumed all the risks of car-riage except such as might result from wan-ton or intentional wrong or a failure to exer-cise due care to avert injury after his danger became apparent." Crider v. Yolande Coal & Coke Co., supra.

If procuring Brock to drive the car on the business of the bank was within the scope of Malone's authority, as alleged, Brock be-came the agent of the bank and was not the agent or servant of Malone, and Malone would not be liable unless he was present and partici-pated in the damnifying act.

While count 6 was subject to demurrer, it was not subject to joint demurrer of the de-fendant bank and Malone, nor to the grounds stated in the demurrer. Code 1923, § 9479; Romaine S. Scott et al. v. Jackson Securities & Investment Company, ante, p. 90, 142 So. 76.

The plaintiff's evidence shows that S. H. Brock, while driving the automobile, a one seated Ford roadster, belonging to the defend-ant First National Bank of Dothan, along the highway between Elba and Enterprise, stop-ped the automobile and invited plaintiff and his brother-in-law, Culver, to "get on and ride"; that Culver got in the car and occupied a seat by the side of Brock, and plaintiff got on the running board standing and holding to the top of the car. Brock then drove the car along the highway.

Culver testified: "I don't know how far it was that we went on the car before the acci-dent, right up that hill. In my judgment, I might say it is a quarter of a mile or may be better; I don't know exactly. Now, as he was driving up the road, well, when we got on top of the hill, after we drove off on top of the hill there, just about on the level with the hill, we were driving along and neither one was saying anything to the other, and a chicken flew across the road in front of his car. It looked like he slackened up enough, just enough to miss that one and a drove of chickens started on a few feet after them. It was a drove of chickens that flew up in front of the car and as they did why he came down on his brakes, there was just the sud-den stop of the car and that threw Mr. San-ders off the running board, and as he fell he rolled over two or three times. * * * When Mr. Brock put on the brakes I was sit-ting right to the side of him on the seat.

Well, it was such a sudden stop that it threw me forward and I grabbed that way with my hands and I grabbed forward and grabbed right under the windshield * * * the dash board part of it. It looked like it threw Mr. Sanders 10 or 12 feet from the automo-bile. He rolled over you know."

The plaintiff testified: "When I got on the car I stepped up on the running board, Mr. Brock came running by us and stopped and backed up and opened the door and said: 'You all get on,' and Mr. Culver stepped on the inside of the car and I stepped up on the running board. I was standing up there on the running board holding to the top of the car. It was what we called a roadster; it was a Ford car. And it had a canvas cover top. I had one hand on the front of the top and the other up on the side just like this. The curtains were up on the car on my side. The curtains were just ordinary curtains like they have on other Ford automobiles up there. I did not have my hand underneath the curtains holding to the steel or wooden. I just had hold of the edge of the top. That was the only place I could get hold of. I was standing on the right running board and was facing towards Brockton. I had hold of it with both hands. As we went on up the hill and the first chicken that crossed the road was right there just before that road that goes to the Alms House; it ran into the road ahead of the car and he weakened the car just enough that you could tell that he weakened it. About like you take your foot off the accelerator but it didn't seem that he touched the brakes, but it just slowed down the least little bit and the car kept going and a few feet further and there were five chick-ens ran out across the road, I was on the out-side and I saw them, and I knew as much then as I know now, and there were five of the chickens, and when the five chickens ran out, he shoved on the brakes and the car just stopped, and it was just like this: I couldn't hold to the car any quicker than I did, and it threw me out and I fell off on the side and rolled over two or three times before he stop-ped it. * * * The car didn't hit me at all."

The defendant Malone testified:

"The car that is involved in this action be-longs to the First National Bank of Dothan. It was in my charge at Elba. I carried pas-sengers on that car in business. I didn't make a practice of carrying anybody except on business, not for pleasure. I have my own car here that I use for pleasure. This car was used simply for the business of the bank. Mr. Brock, had this car at the time of the ac-cident; Mr. Brock and I were both going over to Enterprise on business and Mr. Brock had some business over there, and we had planned to go Friday and he was going with me, and we had first made out plans on Thursday morning, but I was sick, I wasn't

feeling very well, and so I notified Mr. Brock that I was sick and I wouldn't be able to go, and Mr. Brock suggested that he would take the car because my car was on the other side of the river as the bridge had been washed away in the flood and it was on the other side of the river and he said he would take my car and was going to Enterprise and I had business in New Brockton and he would go through New Brockton and he would stop by there and would look after my business over there, which was checking up some cotton at the warehouses and things like that for me. Mr. Brock was not in my employ. Mr. Brock was not in the employ of the First National Bank of Dothan. Mr. Brock was in business with, or was under contract with, the Standard Oil Company. * * *

"He had some business over there in Enterprise, I think. I have forgotten right now whether it was some of his oil business but it seems like he had a house or something over there and also some business at New Brockton, that he had some agencies or accounts there at New Brockton and he wanted to go over there and see them, and that is how it came about. I told him that he could use this car if he would look up those records that I wanted. I never knew this plaintiff prior to that time. I did not invite this plaintiff to ride on that car. I did not authorize Mr. Brock to invite this plaintiff. I did not authorize him to invite anybody to ride on it. * * *

"I didn't tell Mr. Brock not to take anybody on that car. I had had that car over here two or three months. The First National Bank had some notes and mortgages outstanding out there at the time. I was living in Elba at that time, temporarily; I had this car that is involved in this wreck and kept it here during the time I was here. At that time I was a director in the First National Bank and you might say I was a collector. I didn't have any other official position with the First National Bank of Dothan. I wasn't one of the vice-presidents. I wasn't some other officer than a collector for the bank at that time. I kept that car with me over here in Elba in and about my business for the First National Bank of Dothan. I used it around in my business. I didn't make any offer of it to haul people all around here. I had my own car over here that I used for pleasure. I did not have a habit of doing that though. I did do it sometimes. The First National Bank of Dothan didn't ever tell me not to do it."

If it be conceded that in these circumstances Malone had implied authority to turn the automobile over to Brock for the special purpose of checking the records at the warehouse at New Brockton, and that in this use of the automobile, for this special purpose,

Brock was pro hac vice an agent of the bank, yet there is nothing in the evidence justifying an inference that Brock had authority to use the automobile for carrying plaintiff or any one else.

■ Plaintiff, therefore, at most, was an invitee of Brock, and a mere licensee on the automobile, to whom the defendant bank owed no duty other than not to negligently injure him after its said agent Brock discovered his peril, or not to wantonly or willfully injure him in the use of the automobile, and as observed in Crider v. Yolande Coal & Coke Company, 206 Ala. 71, 73, 89 So. 285, 287, "Our judgment is that, on the evidence in this case, defendant's agent, as matter of law, was not, within the purview of the stated rule [of subsequent negligence], made aware of plaintiff's danger in advance of his injury, and hence was guilty of no dereliction of duty, and further, that, even if negligence might be attributed to defendant's agent, still plaintiff took a position of unnecessary danger, and in doing so he was, upon the undisputed evidence, guilty of negligence contributory to his injury, put in issue by appropriate plea. Beyer v. L. & N. R. Co., 114 Ala. 424, 21 So. 952."

The court therefore erred in refusing the affirmative charge requested by the defendants as to the sixth count of the complaint.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.