175 So. 358

### BROWN v. STANDARD CASKET MFG. CO. et al.

#### 3 Div. 217.

Supreme Court of Alabama.

June 14, 1937.

Rehearing Denied June 29, 1937.

514

London & Yancey, of Birmingham, for appellees.

McCord & Knabe, Thos. B. Hill, Jr., and Wm. Inge Hill, all of Montgomery, for appellant.

KNIGHT, Justice.

Suit by appellant against the appellees to recover damages for personal injuries alleged to have been sustained by appellant, as the result of a collision between an automobile, owned and operated by an agent or servant of appellee Standard Casket Manufacturing Company and a truck of the appellee Brown & Williamson Tobacco Company, which was at the time operated by one of its servants or agents.

The accident occurred in the daytime, at the intersection of McDonough street and Finley avenue, in the city of Montgomery.

The plaintiff, at the time she was injured, was riding in the car of the Standard Casket Manufacturing Company, which was proceeding north along the said McDonough street, and the accident occurred in the residential section of the city.

The plaintiff stated her case in four counts, but, before the conclusion of the trial, she withdrew count 4, and the cause was tried upon counts 1, 2, and 3, charging, in substance, that her injuries were proximately caused by the negligence of the two defendants, their agents or servants, in causing the automobile and truck to collide.

The court, at the written request of the defendant Standard Casket Manufacturing Company, gave the general affirmative charge in its behalf, but allowed the case to go to the jury as to the defendant Brown & Williamson Tobacco Company. The jury returned a verdict for both defendants, and judgment was duly entered thereon. The plaintiff prosecutes the appeal from said judgment.

It is obvious that the action of the trial court in giving the affirmative charge in favor of the defendant Standard Casket Manufacturing Company, at its request, proceeded upon the theory that the servant or agent of this defendant, in permitting the plaintiff to ride to Montgomery, Ala., in the car of said defendant, was acting beyond the scope and line of his employment; and that, therefore, the defendant Standard Casket Manufacturing Company owed the plaintiff no duty other than not to negligently injure her after its said agent or servant Arnold discovered her peril, or not to wantonly or willfully injure her in operating the automobile. The trial court was of the opinion that, under the evidence, the said defendant's agent, as a matter of law, was not guilty of either subsequent negligence, or of any willful or wanton misconduct. In this conclusion we concur.

It appears from the evidence, without conflict, that the husband of the plaintiff was in the employ of the Brown Service Funeral Home; that he had quite recently been transferred by his company to Dothan, there to take charge of the company's business as district manager. This company was engaged in "writing funeral or burial insurance and providing funerals for its policy holders."

Mr. Arnold, the operator of the car of the Standard Casket Manufacturing Company, was in the employ of both the Standard Casket Manufacturing Company and the Brown Service Funeral Home. The plaintiff's husband was not connected in any way with the Standard Casket Manufacturing Company.

On August 31, 1935, Mr. Arnold was in Dothan on business of both companies, and on that day plaintiff's husband arranged with Arnold for her to ride with him to Montgomery in order to pack the household furniture of her husband, preparatory to the removal of the same to Dothan. The furniture was to be transferred from Montgomery to Dothan at the expense of the Brown Service Funeral Home.

It was on this trip from Dothan to Montgomery that the car of the Standard Casket Manufacturing Company figured in the collision with the truck of the defendant Brown & Williamson Tobacco Company—and in which plaintiff received her injuries.

There was no evidence in the case, until after the trial, tending, in the slightest degree, to show that the Standard Casket Manufacturing Company had any knowledge of, or had consented to, the arrangement made by plaintiff's husband with the said Arnold, its agent or servant, by which plaintiff was allowed to ride in the car of the Standard Casket Manufacturing Company to Montgomery.

As to Arnold, the agent or servant of the Standard Casket Manufacturing Company, the plaintiff was, no doubt, an invitee under the rule of our decisions.

Wurtzburger v. Oglesby, 222 Ala. 151, 131 So. 9; First National Bank of Dothan et al. v. Sanders, 225 Ala. 417, 143 So. 578. But as to the Standard Casket Manufacturing Company the relation was ostensibly that of a mere licensee. Crider v. Yolande Coal & Coke Co., 206 Ala. 71, 89 So. 285; McCauley v. Tennessee C. I. Co., 93 Ala. 356, 9 So. 611; Lawrence v. Kaul Lumber Co., 171 Ala. 300, 55 So. 111; First National Bank of Dothan et al. v. Sanders, supra.

■ Under the evidence, the court committed no error in giving the general affirmative charge for the defendant Standard Casket Manufacturing Company.

While the Brown Service Funeral Home is not a party defendant to this suit, nevertheless, the plaintiff offered to show "to the court and jury, that Lee Edmundson is the president of the company and owns both of the companies, and Mr. Arnold was his agent, working for both companies at the time; offers to show to the jury and the court that Edmundson was President of the Brown Funeral Home, and is the main stockholder, controlling stockholder and director in the Standard Casket Manufacturing Company, and that Arnold is an agent of his, working for both companies, and was, on that date; and your Honor. * * * "

The court refused to allow the plaintiff to make this proof, and to which ruling the plaintiff duly reserved an exception. In this ruling there was no error.

■ This court, in the case of Jefferson County Burial Society et al. v. Cotton, 222 Ala. 578, 133 So. 256, 259, held the legal fiction of distinct corporate existence may be disregarded in a case where a corporation is so organized and controlled, and its affairs are so conducted as to make it merely an instrumentality or adjunct of another corporation. And it was further held in that case that, while "as a general rule the legal fiction of distinct corporate entity will be recognized and enforced to protect the corporation in the conduct of its business, the principle should not be carried so far as to enable the corporation to become a vehicle to evade just responsibility."

This statement of the rule is sound, and we are willing to reaffirm it. However, in that case both corporations were sued, and a joint judgment was obtained upon evidence tending to show that the two defendant corporations were the mere "business conduit and alter ego each of the other."

The evidence offered fell far short of proving that the two defendant corporations were the mere "business conduit and alter ego each of the other."

■ "It may be stated as a general rule that the fact that a corporation owns the controlling stock of another does not destroy the identity of the latter as a distinct legal entity, and unless it be shown that such separate corporate existence is a mere sham, or has been used as an instrument for concealing the truth or perpetrating fraud, or where the organization and control of the subsidiary are shown to be such that it is but an instrumentality or adjunct of the dominant corporation, no liability may be imposed upon the latter for the torts of the subsidiary corporation." Note, 50 A.L.R. 611; Minnie B. Berkey v. Third Avenue Railway Company, 244 N.Y. 84, 155 N.E. 58, 50 A.L.R. 599; Birmingham Realty Co. v. Crossett, 210 Ala. 650, 98 So. 895; Ft. Smith Light & Traction Co. v. Kelley, 94 Ark. 461, 127 S. W. 975; Louisville Gas Co. v. Kaufman, 105 Ky. 131, 48 S.W. 434; Louisville Gas & E. Co. v. Moore, 215 Ky. 273, 284 S.W. 1082; Bethlehem Steel Co. v. Raymond Concrete Pile Co., 141 Md. 67, 118 A. 279; Erickson v. Minnesota & O. Power Co., 134 Minn. 209, 158 N.W. 979; Oriental Invest. Co. v. Barclay, 25 Tex.Civ.App. 543, 64 S.W. 80.

In the case of Perry v. Ohio Valley Electric R. Co., 70 W.Va. 697, 74 S.E. 993, it was held that the fact two corporations have practically the same officers, that a certain individual is secretary and manager of both companies, and that the employees of one company performed services also for the other, and were partly paid out of the treasuries of both companies, is not sufficient to justify a jury in finding that the two companies were practically one and the same, and that there was liability on the part of both companies for the negligence of the one.

■ And we fail to see just how the fact that Mr. Edmundson owned the controlling stock in the Standard Casket Manufacturing Company, and in the Brown Service Funeral Home, and that Arnold was an agent working for both companies, can make the two corporations one and the same, and thereby render the

one liable for the torts of the other; or that rendering a service for the one can be made the basis of liability against the other.

We hold that the court committed no error in refusing to allow the plaintiff to make the proof above indicated.

It is next insisted by the plaintiff that the court committed error of reversal in overruling her motion for a new trial, as to the defendant Standard Casket Manufacturing Company, upon grounds, inter alia, that, since the trial of the cause, the plaintiff had discovered new evidence, not merely cumulative, or impeaching in character, which, with due diligence, could not have been discovered by plaintiff before the trial.

This phase of the motion is predicated upon an affidavit filed in the cause by plaintiff, and which was made by one R. M. Lackey, a vice president of the Standard Casket Manufacturing Company. The affidavit is as follows:

"State of Alabama, ⎱
"Jefferson County. ⎰

"Personally appeared before me R. M. Lackey who is known to me and who is an officer of the Standard Casket Manufacturing Company. Being by me first duly sworn he deposes and says: I am Vice President of the Standard Casket Manufacturing Company. As such officer of said Company I have direct supervision over Mr. T. G. Arnold, who is in the employ of both the Standard Casket Manufacturing Company and the Brown-Service Funeral Company. The car in which he travels is the property of the Standard Casket Manufacturing Company. He uses the same in the business of both the above named Companies. He so used it in the years 1935 and 1936. When Mr. Arnold permits any employee of either of said above named companies to ride in his automobile or members of their families, it is with the approval and consent of the Standard Casket Manufacturing Company and it was and is with my consent and approval."

It is to be noted that the general charge for the defendant Standard Casket Manufacturing Company could not have been justified except on the theory that the plaintiff was, while riding in defendant's automobile, a mere licensee, and that the evidence did not afford an inference of subsequent negligence on the part of this defendant's servant or agent, nor any inference of wantonness or willfulness on the part of such servant. This was the theory of said defendant, as disclosed by the record, throughout the trial. This contention the court sustained—and it was upon this theory alone the court gave the general charge on behalf of the Standard Casket Manufacturing Company.

That the Standard Casket Manufacturing Company knew full well, at the time of the trial, that the said Arnold, its servant or agent, had the right and authority to permit employees of both of said affiliated companies, and the members of the families of said employees, to ride in said car, and that, when he did so, it was with the approval and consent of the Standard Casket Manufacturing Company, the affidavit of the vice president leaves no room to doubt.

It is insisted by the appellee Standard Casket Manufacturing Company that the motion for new trial was properly overruled, for the reason, among others unnecessary to be mentioned, that the plaintiff wholly failed to acquit herself of negligence (a) in not moving for a continuance, or postponement of the trial, and (b) in not sooner discovering the evidence upon which the motion for a new trial is rested.

■ We are quite familiar with the rule that a new trial for newly discovered evidence will ordinarily be granted only where the party applying has shown due diligence, and the new evidence is not merely cumulative, or impeaching in character. Fulwider v. Jacobs, 221 Ala. 124, 127 So. 818; Ohme et al. v. Bisimanis, 222 Ala. 262, 132 So. 161; Fries v. Acme White Lead & Color Works, 201 Ala. 613, 79 So. 45.

But in the case at bar the newly discovered evidence was locked up in the breast of the defendant Standard Casket Manufacturing Company, and, from the position taken by this defendant on the trial, viz., that the plaintiff was, as to it, a mere licensee, the plaintiff could not have had any reason to suspect that the facts were otherwise.

■ In 46 Corpus Juris, p. 270, § 237, the author states the rule as to admissions by the successful party, after the trial, as follows: "A new trial may be granted for newly discovered evidence of material admissions of the successful party, which is

not cumulative to other evidence offered at the trial. Evidence of admissions made by the successful party after the trial, or of subsequent declarations inconsistent with his testimony on the trial, may be ground for setting aside the verdict, at least in the interest of justice."

This rule seems to be abundantly supported by the adjudged cases. See note 36, on page 270, 46 C.J.

The facts presented by this record clearly differentiate this case from the case of Jones et al. v. Tucker, 132 Ala. 305, 31 So. 21.

We are of the opinion, and so hold, that the newly discovered evidence was material to the issue tried, that it was not merely cumulative, or impeaching in character, that, under the circumstances of the case, the plaintiff could not be charged with lack of diligence in not discovering it sooner, and that on another trial this new evidence may be productive of a different result. We are further of the opinion, and so hold, that, in the interest of justice, a new trial, as to the defendant Standard Casket Manufacturing Company should have been granted by the trial court. For this error in overruling the plaintiff's said motion, the cause will be reversed as to the appellee Standard Casket Manufacturing Company and remanded for another trial.

This brings us to a consideration of appellant's assignments of error, as affecting appellee Brown & Williamson Tobacco Company.

The court permitted plaintiff's case, as against this defendant, to go to the jury, with result that the jury returned a verdict in favor of both defendants.

The evidence, on part of the plaintiff tended to show that she was coming into Montgomery, near noon of August 31, 1935, riding in a car of the defendant Standard Casket Manufacturing Company; that this car was proceeding up McDonough street at a rate of speed of 25 to 35 miles per hour, through a residential section of Montgomery. There was testimony also that this car was being driven at a more rapid rate of speed. The driver of this car was driving on the right of the center of the street, and, when it reached the intersection of McDonough street and Finley avenue, the car of the defendant Standard Casket Manufacturing Company came into collision with the truck of the defendant Brown & Williamson Tobacco Company, which resulted in the injury of the plaintiff.

Then there was evidence tending to show that the driver of the Standard Casket Manufacturing Company's car never lessened the speed of his car in entering the intersection.

There was testimony tending to show that the truck at the time of the collision was being driven along Finley avenue at a rate of speed of 30 to 35 miles per hour, and it crossed over the center of McDonough street before it came into contact with the car of the Standard Casket Manufacturing Company.

The driver of the truck testified that he changed gear before entering the intersection, and that he had reduced the speed of his truck to less than 15 miles per hour; that he saw the car in which plaintiff was riding; that, when he first saw it, it was approximately 30 feet down the street from the intersection, "or may be a little further"; that the car in which plaintiff was riding was then approaching the intersection at about 45 miles per hour; that when he first saw the other car coming at the rate of 40 or 45 miles per hour he could have stopped his truck in approximately 6 feet; but did not, simply drove on. At one point in his testimony this witness said the car in which plaintiff was riding was about 100 feet distant from the intersection when he first saw it, and that it was traveling toward the intersection at a speed of about 40 or 45 miles per hour.

There was evidence tending to show that both the truck and the car were being driven at a rate of speed in excess of 20 miles per hour, in a residential district. As to whether the car or the truck reached and entered the intersection first there was a sharp conflict in the evidence.

It is insisted that the court committed error to reversal in giving, at the request of appellee, Brown and Williamson Tobacco Company, written charges 3 and 13. The insistence is, that these charges "take from the jury the disputed issue of fact as whether the Brown & Williamson Tobacco Company truck entered the intersection at an unlawful speed, in which event, under the statute, any right of way it might have had was thereby forfeited."

Evidently, in requesting this charge, this appellee had in mind section 1397(66) (a),

Code 1928, which is as follows: "When two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right except as otherwise provided in section 1397(64). *The driver of any vehicle traveling at an unlawful speed shall forfeit any right of way which he might otherwise have hereunder.*" (Italics supplied.)

These charges were possibly misleading, but we would not reverse the cause for this reason, as no doubt their misleading tendency could have been cured by an explanatory charge. Moore v. Nashville, C. & St. L. R., 137 Ala. 495, 34 So. 617.

Charge No. 7, given at the request of the defendant Brown & Williamson Tobacco Company, was not only misleading to a degree that it most probably misled the jury, but was positively erroneous, in that it instructed the jury that there could be no recovery against this defendant unless the jury found that Darby, its servant, was guilty of *some wrongful act,* thus in effect instructing the jury that there could be no recovery for a negligent omission or failure to act on the part of said Darby.

In the case of Randle v. Birmingham Railway Light & Power Co., 169 Ala. 314, 53 So. 918, 921, it was said: "Negligence may result from omission in respect of duty. Grant v. Moseley, 29 Ala. 302. But *act* and *omission* token different conceptions. *Act* denotes the affirmative. *Omission* denotes the negative. *Act* is the expression of will, purpose. *Omission* is inaction. *Act* carries the idea of performance. *Omission* carries the idea of a refraining from action. Webster's New International Dictionary defines *act,* primarily as 'that which is done or doing; the exercise of power, or the effect of which power exerted is the cause; a performance; a deed.' That work thus defines *omission:* 'Act of omitting; state of being omitted; neglect or failure to do something; that which * * * is left undone.'"

The complaint in this case was sufficiently comprehensive in its charge of negligence to include and comprehend negligence by way of act, or omission to act.

The charge in question limited recovery to proof of some wrongful act, and concluded against recovery for plaintiff's injuries unless the sole cause of such injuries was some positive wrongful act, non constat, they may have been proximately caused by a negligent omission to act, and there was evidence tending to show such negligent omission. Randle v. Birmingham Ry., L. & P. Co., 169 Ala. 314, 53 So. 918; Baker v. Baker, 220 Ala. 201, 124 So. 740.

Charges 17, 19, and 21 were each bad, and should not have been given. Charge 17 was bad, in that it assumed, as a matter of law, that to operate a car, at the designated time and place, at a rate of speed of 25 or 30 miles per hour, and to enter the intersection at that rate of speed was prima facie guilt of negligence. The law declares no such rule. To so operate a car, under such conditions, might authorize the jury to infer negligence, but there is no rule of law which declares such operation to be prima facie negligent. The question of negligence, vel non, in such cases is one for the jury, and not for the court. McCaleb v. Reed, 225 Ala. 564, 144 So. 28.

Charge 19 was bad in that it instructed the jury that if the Arnold car approached the intersection at a rate of 25 or 30 miles per hour, that Arnold, thereby, and as a matter of law, forfeited any claim to the right of way which he might otherwise have had. Whether he forfeited his right of way, if he had any, was a question for the jury's determination under the facts of the case. It was not a question of law to be determined by the court.

Charge 21 was defective in that it assumed that the law had fixed the rate of speed for automobiles traveling along McDonough street. The law has fixed no such speed limit, so far as we are advised.

We find no other errors in the record.

For the errors pointed out, the judgment, as to each of the defendants, must be reversed and the cause remanded.

Reversed and remanded as to both appellees.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.