180 So. 334
### FOSTER v. ROSAMOND.
#### 6 Div. 51.

Court of Appeals of Alabama.

Oct. 26, 1937.

Rehearing Denied Feb. 8, 1938.

Further Rehearing Denied Feb. 22, 1938.

John S. Foster, Frank A. Wilkinson, and Albert Boutwell, all of Birmingham, for appellant.

W. H. Sadler, Jr., of Birmingham, for appellee.

RICE, Judge.

Appellant, who was the plaintiff in the court below, began this suit against appellee claiming $2,500 of him because of the alleged breach of a contract between the plaintiff and the defendant (appellee) whereby the defendant agreed to invest $3,000 for the plaintiff in Florida real estate—the "Florida boom" being in full swing at the time—with the further understanding that the defendant guaranteed that the money would be returned within a certain number of months; that the defendant should undertake such service and assume such risk without any compensation whatsoever; that if any profit should come from the investment the entire profit should go to the plaintiff, and any loss would fall entirely upon the defendant.

The plaintiff testified that such a contract was made; the defendant denied it. The defendant stated that the plaintiff had requested him to invest money in Florida real estate during the real estate boom in that state and that he agreed to do so, warning her of the speculative nature of the transaction, but undertaking to render that service without charge because of the kinship—they were related by marriage—that existed between the plaintiff and the defendant.

But before the case was submitted to the jury plaintiff had receded from her claim as above outlined, and relied for a recovery upon the contention that, in respect to $500 of the money sent to the defendant for investment, the defendant used that money for his own purposes and did not invest it.

It was shown that a total of $3,000 was sent to the defendant for investment. It was conclusively shown that $2,500 of the money was invested, and plaintiff abandoned any claim for a recovery in respect to that $2,500.

As to that particular $2,500 the evidence conclusively showed that the defendant had invested $2,000 along with a number of other persons in a corporation formed by them to purchase Florida real estate, and that the plaintiff had received and accepted without objection (and kept) the shares of stock representing that investment of $2,000. And as to the remaining $500 of that particular $2,500 the evidence conclusively showed that the defendant had invested that $500 in Florida real estate which was soon thereafter sold at a profit, and that the defendant had returned to the plaintiff, in cash—or a check which was "cashed"—the $500 so invested, together with $100, being her proportionate share of the profit.

The case was reduced to the remaining $500. As to that, the defendant's testimony was inconsistent, uncertain, and inconclusive, though he did maintain that he had invested, for plaintiff, and lost, this particular $500.

It seems to us but natural that defendant's testimony as to this $500 should have been "inconsistent, uncertain, and inconclusive"—confused might be a better term.

The transactions attempted to be described in the testimony occurred in 1925—while the "Florida boom" was at its most hectic. The testimony was given some ten years after the transactions. It was shown that at the time of the transactions here in question defendant, along with a vast number of others, was actively engaged in dealing in real estate in Florida on his own behalf, and for and along with numerous other persons. He participated in a variety of transactions with a large number of people in different parts of the country.

The common practice in such matters in Florida at that time, as shown by the testimony, and as is well known, was to form what was called syndicates—that is, a number of persons would join together in the purchase of a singe piece of real estate, taking title sometimes in a trustee, and sometimes in a corporation.

When the defendant received plaintiff's money, he claimed, and testified, that he placed it in these syndicates and, naturally, did not attempt to carry in his own mind the details, or to himself keep private records of the history of the operations of these several syndicates.

It appears without dispute that when the "Florida boom" reached its climax, if that describes it—"exploded," one of the lawyers in the case terms it—confusion was worse confounded. Records became scattered; and, as appellee's counsel describes it, "those participating in the boom, in large numbers, returned to their former homes and former pursuits and tried to forget." Appellee is shown to have invested and lost large sums of his own individual money, as well as that of others near and dear to him—not counting plaintiff, appellant.

So we say it is but natural that his account, in his testimony at the trial, of what he did with the $500, the basis of the verdict returned against him, was not as definite as it could have been had he been then in possession of all the evidence.

██ We have carefully studied the evidence embodied in the bill of exceptions. It is our considered opinion that appellee could not, rightfully, be convicted of a lack of diligence in seeking out, or recalling, every bit of the evidence that might have supported his testimony on the trial. Ohme

et al. v. Bisimanis, 222 Ala. 262, 132 So. 161.

██ After the trial, upon a renewed search for evidence, and, as we read the record, purely by accident, he found a canceled check, which, if he had had same at the trial, would have, in our opinion, changed the jury's action.

At any rate, upon the hearing of appellee's motion to set aside the verdict of the jury, and the judgment rendered thereon, the learned trial judge was of the opinion that this newly discovered evidence was of that nature. And he accordingly granted appellee's motion—basing his action, as the judgment entry recites, upon the ground of "newly discovered evidence."

The following statement of the law seems to have, at least in effect, the full approval of our Supreme Court, to wit: "The granting or denying of a motion for a new trial on the ground of newly-discovered evidence is a matter resting largely in the discretion of the trial court, and its order will not be reversed on appeal unless it is made to appear that the order violated some legal right of appellant, or was an abuse of discretion; the presumption being that the discretion was properly exercised." Layman v. Minneapolis St. Ry. Co., 66 Minn. 452, 69 N.W. 329. See Stephens et al. v. Pate, 221 Ala. 200, 128 So. 176.

It only remains for us to say that we have closely examined the testimony upon which appellee's motion for a new trial was submitted. And that we are, after checking same against the requirements in such cases so explicitly laid down by our Supreme Court in the opinion in the case of Fries v. Acme White Lead & Color Works, 201 Ala. 613, 79 So. 45—which remains the law to this date (see Shepard's Alabama Citations)—of the opinion that said evidence met every test for "newly discovered evidence" upon which a new trial ought to be granted. Certainly, that the trial court did not, in granting same upon such evidence, abuse the discretion reposed in him.

So the judgment is affirmed.

Affirmed.

On Rehearing.

SAMFORD, Judge.

In the original opinion in this case appears this statement, on page 4 of the opinion, ante, p. 101, 180 So. 336, to wit:

"After the trial, upon a renewed search for evidence, and, as we read the record,

purely by accident, he [defendant] found a cancelled check, which, if he had had same at the trial, would have, in our opinion, changed the jury's action.

"At any rate, upon the hearing of appellee's motion to set aside the verdict of the jury, and the judgment rendered thereon, the learned trial judge was of the opinion that this newly discovered evidence was of that nature. And he accordingly granted appellee's motion—*basing* his action, as the judgment entry recites, upon the ground of 'newly discovered evidence.' "

In the brief of appellant's counsel, the importance of the check with its recitals is not minimized as evidence, but it is contended that the check itself is merely cumulative of what had taken place on the trial, and that the defendant had not laid a proper predicate for the introduction of the check.

This is based upon the testimony of the defendant given on the trial to the effect that there had been such a check and that he had searched diligently for it in places where he would usually have kept such a paper and could not find it.

On the hearing of the motion for a new trial the defendant testified that prior to the time of the trial of the case on April 7, 1936, he made a search a number of times for the check, and, detailing his efforts, he said: "I had a drawer at home that I kept my papers in. I had my desk at the warehouse and a desk at home. I first went through this drawer that I kept all of my checks and cancelled checks and things in and took out every check from all the banks, both the bank in Florida and the bank in Birmingham that I did business with and looked at every check beginning with 1925 and on up until the time this suit was filed, and later. They weren't in there. I went through my desk at the office. I couldn't find them. My wife searched. Then we made several searches. I took out every paper and every check and everything I had, and when I got through, why, I just bundled them all in a great big bundle, these checks, and wrapped them up and put them away. And then I went back again, and when this trial came up, the night before my wife and I went through all of those things again to see if we could find it. We weren't able to find it. I am talking about this $500.00 check."

The defendant continued to further testify that after the trial of the case, during which he had been charged with fraud by the attorney representing the plaintiff, he continued the search, testifying in detail as to its thoroughness and into every place where the check might have been found; finally, coming to the finding of the check, he testified as follows: "We were working together. We went through my wife's desk. We went through her desk, went through the top part of it and all and then we got down—it has a little drawer on the underside, and it was full of papers, and we took out every paper in there and finally we got everything out. There was a check book down in the bottom of this drawer, and in that check book—it was just the stubs, you know, a used book, just the stubs of the book—and in that thing were three checks, and this was one of them—(the five hundred dollar check in question)."

He further testified that he was not in the habit of filing his canceled checks in this place, that the stub check book referred to was not a book of the bank on which that check was drawn, it was a different bank; the check being drawn on a Florida bank and the stub book being that of a Birmingham bank.

The check was then introduced as evidence, disclosing on its face that it went to the credit of the plaintiff on the books of Pease-Powell Corporation in West Palm Beach, Fla.

It further appears from the evidence that the check had in some way gotten into the desk of defendant's wife and among her papers, where it was not natural for him to look in trying to find the check.

The order of the court in granting the motion for the new trial is based upon the discovery of this new evidence—"which the court considers material, warrants the granting of this motion."

We are of the opinion that the evidence discloses all the diligence that is required necessary for a predicate in the introduction of newly discovered evidence, and the only question for us to determine is to whether or not the check is merely cumulative of the testimony which had been given on the main trial.

In the case of Mullong v. Mullong, 178 Iowa 552, 159 N.W. 994, 995, in a case in all respects similar to the case at bar, the Iowa court, after holding facts testified to as being a sufficient predicate, held: "Cumulative testimony is testimony of the same kind and to the same point. The testimony does go to the same point; that is to the fact of payment, but it is not of the same

kind. The testimony adduced at the trial was oral, and directed to the fact of payment, giving the circumstances thereof; the newly discovered testimony is written, and amounts, if the receipt is genuine, to an admission on the part of plaintiff that he did receive the money from defendant. Manifestly the newly discovered testimony was not cumulative."

To the same conclusion is the case of Bullard v. Bullard, 112 Iowa 423, 84 N.W. 513; Guth v. Bell, 153 Iowa 511, 133 N.W. 883, 42 L.R.A.,N.S., 692, Ann.Cas.1913E, 142; Smith v. Smith, 160 Iowa 111, 140 N. W. 659; to which may be added as persuasive of the proposition, West Virginia Land Co. v. May, 166 Ala. 127, 52 So. 315; 46 Corpus Juris, 257. From all of which we conclude that cumulative evidence is of the same kind and character, and where the newly discovered evidence is of a higher type or character, it cannot be classed as merely cumulative so as to prevent a trial judge from basing his action in granting a new trial for and on account thereof.

The foregoing has been written in response to the earnest insistence of appellant's counsel on application for rehearing. But it is written in full concurrence with the statement on this point appearing in the opinion of RICE, Judge, on the original submission.

The opinion is extended, and the application for rehearing is overruled.