Northeast Res. Recovery Ass'n et. al. v. State of Vermont Agency of Natural Res., No. 595-9-13 Wncv (Toor, J., Oct. 10, 2013).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

VERMONT SUPERIOR COURT
WASHINGTON UNIT
CIVIL DIVISION

| | |
|---|---|
| NORTHEAST RESOURCE RECOVERY ASSOCIATION, and AMERICAN RETROWORKS, INC., d/b/a GOOD POINT RECYCLING, <br> Plaintiffs <br><br> v. <br><br> STATE OF VERMONT AGENCY OF NATURAL RESOURCES, <br> Defendant | Docket No. 595-9-13 Wncv |

RULING ON DEFENDANT'S MOTION TO DISMISS

This case is brought by a non-profit entity, Northeast Resource Recovery Association, which until this month had the contract for a statutorily mandated consumer electronic waste recycling program in the State of Vermont.[1] The other plaintiff, Good Point Recycling, is the subcontractor that actually carried out the recycling work. As of October 1, the State awarded the contract in question to a different entity, Casella Waste Systems. This case seeks to unravel that contract, alleging that the State failed to comply with legal requirements in awarding it.

Plaintiffs filed a motion for preliminary injunction on September 30, the day before the new contract was to take effect. A hearing was held on that motion on October 3. The State requested an opportunity to file a memorandum of law. Until briefing could be completed, then, the court issued a temporary order maintaining the status quo that existed at the time the motion was filed.

---

[1] "Electronic waste" as used here refers to used computers, computer monitors, televisions and the like.

The State filed a motion to dismiss this case in its entirety, arguing that only the Environmental Division has jurisdiction. Plaintiffs have responded to that motion, and the State has filed a reply. In addition, Casella Waste Systems filed a motion to intervene on October 9. Plaintiffs were given until October 11 to respond to that motion.

Because the court concludes that the motion to dismiss disposes of the entire case, making the other motions moot, it is ruling without waiting for tomorrow's deadline for additional filings on the other motions.

Background

Chapter 166 of Title 10 is the source of the legal requirement for the electronic waste recycling program at issue in this case. 10 V.S.A. § 7552 (mandating a plan for electronic waste recycling by January 1, 2011). The Agency of Natural Resources ("ANR" or "the State") is required to establish and review a state-wide program providing for free recycling for households, charities, schools, and businesses with less than eleven employees. Id. § 7552, 7559 and 7551(9). A plan went into effect in 2010. The plan is paid for by imposing fees on manufacturers of electronic devices. Id. § 7553. The statute allows ANR to contract out the administration of the recycling program, which is what it has done. Id. § 7560.

Findings of Fact

The court finds the following facts established by a preponderance of the evidence. For the first two years of the program, ANR awarded the administration of the recycling contract to Northeast Resource Recovery Association ("NRRA" or "Northeast"). Northeast is a non-profit entity that serves numerous municipalities around New England. Its mission is to increase and improve recycling, and to assist municipalities in obtaining the best contracts for doing so. Northeast subcontracted with Good Point for the actual collection, transportation and recycling

2

work in Vermont. Good Point is based in Middlebury, Vermont. It is run by the former head of the Massachusetts Department of Environmental Protection, Robin Ingenthron, who has also been a leader in the recycling field. He appears deeply committed to the principle of recycling, not merely as a business proposition but as an environmental ethic.

The second year of the Northeast contract was set to expire on September 30, 2013. In June, after a formal bidding process, ANR told Northeast its bid had been "conditionally selected . . . pending contract negotiations." Ex. E. Negotiations began with regard to the exact terms of the contract. On July 3, ANR emailed Northeast what it termed its "***final offer*** with regard to the payment of the collection/transportation/recycling of covered electronic devices." Ex. F (emphasis in original). The "final offer," however, was not a draft contract. Rather, it was a brief list of six items relating to compensation to Northeast and to local collection centers. The email demanded a response by July 8.

On July 8, Northeast responded as follows, also by email: "Given the stated position of the Agency, demanding an unequivocal acceptance of this brand new proposed compensation approach for the payment of collection services to which NRRA/GPR is not allowed the opportunity to discuss interpretation nor ramifications such as unintended consequences, we have no choice but to accept the offer." Ex. G. The email requested a copy of the draft contract to review. However, despite repeated requests from Northeast, ANR did not send Northeast any drafts of a contract until over two weeks later, on July 23.

After receipt of the draft contract, the parties had ongoing discussions. Northeast hired a New Hampshire attorney to assist with negotiations. On August 2, the attorney sent a letter to ANR in which he stated that Northeast had "a number of serious concerns that are obstacles to concluding a satisfactory agreement." Ex. I. The letter listed a number of concerns and requested

a meeting to discuss them. A meeting or meetings were held and emails were exchanged. On August 13, one of ANR's staff told Northeast to send over some specific language reflecting its proposal. Northeast did so the next day. Ex. J. It received no substantive response to the proposal. Instead, on August 20 ANR sent an email stating that it had reviewed the proposed language and that "[i]n consideration of the status of negotiations at this point in time, and in light of the current time limitations, the Division has decided to suspend the current negotiations with NRRA and pursue an agreement with a second contractor/bidder." Ex. K.

The Solid Waste Program Manager, Cathy Jamieson, testified that ANR was concerned that the negotiations were taking too long, and that Northeast was not agreeing to one of ANR's key requirements, a 7 cents per pound payment to collection centers. However, ANR never told Northeast that was a non-negotiable, required component of the contract. Rather than sending back a counterproposal, stating that Northeast's proposal was rejected unless certain terms were agreed to, or even clarifying that certain terms were non-negotiable, ANR unilaterally suspended negotiations and started negotiating with another bidder, Casella Waste Systems. On September 24, the Commissioner of the Department of Environmental Conservation signed a contract with Casella.

ANR never actually notified Northeast that it was being denied the contract. Nor did ANR ever send Northeast anything in writing after the email suspending negotiations. Northeast learned of the Casella contract on September 26 when it was at a meeting in connection with completion of the 2012-13 contract terms.

Plaintiffs assert a Rule 75 claim in this case, arguing that ANR failed to comply with (1) mandated contracting procedures for state agencies, and (2) the Request for Proposal itself.

4

According to Plaintiffs, these acts were an abuse of discretion. The complaint seeks an order requiring ANR to rebid the project and properly apply the mandated procedures.

Northeast planned to subcontract to Good Point again if it was awarded the 2013-14 contract. Good Point ramped up its staff in reaction to winning the state contract in 2010, and will have to downsize if it is not awarded the contract this year. Although it has a number of other clients in other states, with contracts worth several hundred thousand dollars, it allegedly cannot meet its mortgage payments on its plant in Middlebury without this contract. The owner testified that the business will likely close if it loses the Vermont contract, and will be unable to reopen in the future because it will no longer be credit-worthy. Thus, Good Point argues that it will suffer irreparable harm in the absence of a preliminary injunction maintaining Northeast's contract while this case proceeds.

## Motion to Dismiss

The State argues that this court lacks jurisdiction because all claims against the State relating to recycling of electronic waste must by law be heard in the Environmental Division of the Superior Court (formerly the "Environmental Court"), rather than the Civil Division. Specifically, 10 V.S.A. § 8503 states that Chapter 220 of Title 10 "shall govern *all appeals of an act or decision of the secretary*, excluding enforcement actions . . . and rulemaking, *under the following authorities…*" (emphasis added).[2] The list that follows includes Chapter 166, entitled "Collection and Recycling of Electronic Devices."[3] Title 10 further states that "any person aggrieved by an act or decision of the secretary . . . may appeal to the environmental division," with an exception not applicable here. 10 V.S.A. § 8504(a).

---

[2] The statute makes clear that "the secretary" means the Secretary of the Agency of Natural Resources or his or her delegate. Id. § 8502(8). The definition expressly includes the Commissioner of the Department of Environmental Conservation. Id.

[3] The court will refer to this as the "Ewaste statute."

On its face, Title 10 appears to require that all challenges to any act of the Secretary of ANR or the Commissioner of the Department of Environmental Conservation be brought in the Environmental Division. The contract awarded to Casella was signed by the Commissioner. Thus, this challenge to that award appears to be within that statutory requirement, depriving this court of jurisdiction.

Northeast and Good Point argue, however, that Title 10 does not apply for various reasons. First, they assert that it merely consolidates existing appeal rights rather than creating any. The court is not persuaded. Section 8504 states that a person aggrieved "may appeal to the environmental division." The court has trouble construing that as not expressly creating a right to appeal.[4]

Plaintiffs also argue that this is not an "appeal" because there is no formal written decision here denying them the contract, and no express statutory provision in the Ewaste statute defining a process for such decision-making. They are correct that the action taken by the Secretary here differs from the more formal denial sent to Good Point rejecting their proposal for an "Opt-Out" recycling program under the very same statute. Ex. A to Plaintiffs' Opposition. ANR's failure to send any written denial of the bid here certainly complicates the court's analysis and is somewhat puzzling. However, the court finds nothing in the statute requiring that something must be written and formal to be an "act or decision."

Nor have the parties pointed to any law suggesting that the terms "act" and "decision" have anything other than their obvious meanings. *See, e.g.*, Town of Bennington v. Hanson-

---

[4] Northeast and Good Point also argue correctly that Rule 5 of the Environmental Rules does not seem to neatly fit this sort of case. For example, it requires an appellant to state the address or location of "the property or development with which the appeal is concerned." V.R.E.C.P. 5(b)(3). That obviously makes no sense here. However, the fact that the rules may not have been amended to match changes in the statute is not a ground on which to reject the clear language of the statute. The court notes, for example, that the title of the Environmental Rules also has not yet been amended to delete the outdated reference to the Environmental Court, but the law changing that court's name is still effective.

Walbridge Funeral Home, Inc., 139 Vt. 288, 292-93 (1981)("A 'decision' has been defined as 'a determination or result arrived at after consideration'")(citation omitted); Brown v. Standard Casket Mfg. Co., 175 So. 358, 364 (Ala. 1937)("Webster's New International Dictionary defines act, primarily as 'that which is done or doing; the exercise of power, or the effect of which power exerted is the cause; a performance; a deed.'")(citations omitted). While the court has found one case in which the Water Resources Board apparently argued that "act or decision" meant a "contested case" as statutorily defined, the Court did not analyze or address that question. In re Stormwater NPDES Petition, 2006 VT 91, ¶ 16, 180 Vt. 261. Even if the requirement for "final" agency action is imported from federal administrative law, it would appear to have been met once the Casella contract was signed. *See, e.g.*, Federal Procedure, Lawyer's Edition, 2 Fed Proc. L. Ed. § 2:318 (West, Westlaw though Sept. 2013)("To be judicially reviewable under the Administrative Procedure Act (APA), agency action must be 'final.'. . . The core questions, for purposes of determining finality, are whether the agency has completed its decision-making process, and whether the result of that process is one that will directly affect other parties.").

The court concludes that this case does involve an "act or decision" made "under" Chapter 166 in that ANR's powers to issue contracts such as the one at issue here flow directly from Chapter 166. That Chapter expressly gives ANR the power to "contract for implementation and administration of" the mandated recycling program. 10 V.S.A. § 7560. That is precisely what this case is about. For this reason, the court concludes that it lacks jurisdiction to hear this case. [5]

---

[5] If truly any "act" of the Secretary related to the Ewaste statute can be appealed, it could lead to absurd results. Can someone appeal to the Environmental Division the personnel actions of the Secretary related to staff working on the Ewaste program, or the paint color for an office for such staff? Surely that was not intended, but "any act" would arguably include such matters. Here, however, the contract in dispute is something expressly referenced in the statute. Thus, the court does not find the outer reach of the statute to be an issue that must be resolved today.

Order

The court grants the State's motion to dismiss this case for lack of jurisdiction. The temporary preliminary injunction is hereby vacated.

Dated at Montpelier this 10th day of October, 2013.

_____
Helen M. Toor
Superior Court Judge