SOUTHERN FARM BUREAU CASUALTY INS. CO. *v.* JONES.

No. 41131 April 27, 1959 111 So. 2d 659

*Mitchell & McNutt,* Tupelo; *J. D. Finch,* Iuka, for appellant.

*Sweat & Sweat,* Corinth, for appellee.

HALL, J.

Appellant appeals from a judgment of the Circuit Court of Tishomingo County in favor of the appellees

in the amount of $5,000 on an insurance policy providing for the payment of that amount in the event T. H. Jones should die as a result of "accident while in or upon, entering or alighting from, or through being struck by any automobile." The appellant appeared and admitted the issuance of the policy, and that it was in effect on the occasion complained of, and that proof of death had been furnished, but denied the other material allegations of the declaration.

The record shows that the deceased, T. H. Jones, had not been feeling good and that he went to a hospital in Corinth where he spent a few days for a complete physical checkup, and on being discharged from the hospital, he got in his own automobile and drove home. His wife was sitting on the porch when he drove into the driveway and he stopped the car and got out; and before he had closed the door of the car, it started running backward down the driveway and he was struck by the door and knocked down. His wife was present at the moment and was an eye witness to the incident.

The record shows that he was struck on the hip and that the hip was red immediately afterward and that it turned blue in a day or two and finally turned black. He suffered great pain with his hip. This occurred on January 25, 1957, and he telephoned to Dr. L. B. Brackstone of Corinth, who had given him the physical checkup, and he reported the incident to Dr. Brackstone and reported the resulting pain and trouble he was having with his hip, and Dr. Brackstone told him over the telephone that he should see an orthopedic specialist. The deceased also saw Dr. Harry Cosby and told him about his trouble and told him that he had been advised to go to Campbell's Clinic in Memphis for examination and treatment, and Dr. Cosby told the deceased that Campbell's Clinic was a good place to go and recommended it to him. As a result, the deceased went to Campbell's Clinic on or about February 3, 1957 and after being

there for about three days under examination, he was permitted to return home, but in a few days he went back to Campbell's Clinic and was there operated on. He remained in the Clinic and his wife remained in Memphis. He was apparently improving nicely on a Saturday night, March 2, 1957 and apparently in good condition when his wife left him at the Clinic at about 9:30 that night. On her return to the Clinic Sunday morning, March 3, he was dead. All of the foregoing is undisputed in the record and the appellant did not offer any proof at the close of the plaintiffs' testimony.

Dr. Brackstone testified that when the deceased came to the hospital at Corinth he was afraid that he had a heart condition and consequently he put him in the hospital there for a checkup. He made an electrocardiogram and gave the deceased a thorough physical examination and said that there were no abnormal findings, no heart trouble, and no physical disease found upon his examination. He also testified that a few days after the deceased was discharged from the hospital at Corinth he telephoned the witness about his hip hurting him and that he advised the deceased to see an orthopedic specialist. Dr. Brackstone testified that from his examination of the deceased and from the fact that deceased was apparently improving nicely after the operation in Memphis he was competent to form and did form an opinion as to the cause of the death and he said that in his opinion Mr. Jones died of an embolism which was caused either by the injury to his hip or by the surgery which was performed thereon. Dr. Cosby testified that he had examined deceased many times and that deceased discussed with him the matter of going to Campbell's Clinic and that from his knowledge of the case he was able to form and did form an opinion as to the cause of death, and he stated that in his opinion it was caused from an embolism or blood clot.

■■ Appellant contends that there was no circumstantial evidence to support the verdict of the jury and that the verdict is based on speculation, surmise, conjecture and mere possibilities, and for its second point appellant contends that the opinion evidence of the doctors should not have been admitted since the facts proven by the plaintiff omitted many essential elements of medical proof and opinions based on such facts were speculative and could have no probative value. In this connection appellant contends that the main case of the plaintiff rested upon inferences and that in developing the main case no proper hypothetical question was asked either of the doctors and that the whole recovery is based upon the piling of inference upon inference.

We think that there was ample proof to support the verdict of the jury and that the verdict is not based on speculation, surmise, conjecture and mere possibilities. We have carefully examined the hypothetical question which was asked each of these doctors and we are of the opinion that the question did not assume or inject any inferences into the case to the extent that the verdict resulted from the piling of inference on inference, nor that it assumd or embraced any facts that had not been shown in evidence. We think the case of Mutual Life Insurance Company v. Rather, 221 Miss. 527, 534-535, 73 So. 2d 163 is in point and we quote from the opinion in that case: "Appellant contends that its objections to the hypothetical question, namely, that it embraced some facts that had not been shown in evidence, and that Dr. Phillips had not seen the insured, after he was taken to the hospital in Memphis, should have been sustained.

"It is true that the doctor did not see the insured after his removal to Memphis. But it would not take a doctor to show the fact that the leg was placed in traction, that is, that weights were attached. Of course, the son could not testify to the medical effect of the

symptoms which he observed; but there is no reason why he should not be permitted to tell what he saw, just as anyone else. No doctor was present when the injured man died. In the absence of an autopsy, a doctor in the hospital, in order to give his opinion as to the cause of death, would have doubtless had to rely on the symptoms which were observed by the son and the orderly.

■■ "The objections were properly overruled for the reason that a medical expert may base an opinion 'partly on facts within his own personal knowledge and partly on facts shown by the testimony of others * * *'. 32 C. J. S., Evidence, Section 536, pp. 255-6. See also 20 Am. Jur., Evidence, Sections 793-4, pp. 666-7.

"Evidently the death resulted from an injury which was received in a fall."

■■ Appellant's final complaint arises in this manner. In the declaration, the plaintiffs alleged that due proof of loss had been furnished to the defendant and attached as Exhibit C to the declaration a certificate from the operating surgeon in Campbell's Clinic and also attached as Exhibit D a copy of the death certificate. At the trial the defendant made a motion that Exhibits C and D to the declaration be stricken therefrom and the court sustained this motion. Thereupon one of the attorneys for the plaintiffs, in the presence of the attorney for the defendant, took a knife and removed the staples which held these two exhibits to the declaration and removed them from the declaration, but the attorneys for both sides neglected to strike from the declaration a reference to Exhibits C and D and after the evidence had all been submitted and the case argued and the jury had gone to their room for deliberation, one juror contacted a deputy sheriff and inquired about these exhibits. Thereupon the deputy sheriff contacted the judge and the judge told him that the jury already had all the papers that they were supposed to have. Bas-

ed upon this failure to strike from the declaration all reference to the Exhibits C and D, counsel for appellant made a motion for a new trial which the court heard and overruled, and this is assaigned as error. In passing upon this motion the judge stated that all references to the exhibits should have been deleted from the declaration but that he did not blame either side for failure to do this, and the judge said that he did not think it was material enough to set aside the verdict because of failure to do as he had instructed. Incidentally, the defendant obtained an instruction which told the jury that the plaintiffs' failure to present the testimony of such doctor or doctors who operated on the deceased at Campbell's Clinic raised a presumption that their testimony would have been adverse to the plaintiffs. Considering the case as a whole, we do not think that any error was committed by the trial court, and its judgment will, therefore, be affirmed.

Affirmed.

*McGehee, C. J.,* and *Lee, Holmes* and *Gillespie, JJ.,* concur.