316 So.2d 242 (1975)
W.T. VICK et al.
v.
John Daniel COCHRAN.
No. 48047.
Supreme Court of Mississippi.
July 7, 1975.
Rehearing Denied August 18, 1975.
*243 Mitchell, McNutt, Bush, Lagrone & Sams, Tupelo, for appellants.
*244 Smith, Downs, Coleman & Ross, Corinth, for appellee.
Before PATTERSON, SMITH and BROOM, JJ.
SMITH, Justice:
W.T. Vick and Alfred Vick, doing business as W.T. Vick Lumber Company, and A.C. George, Jr., appeal from a judgment in the amount of $40,000 entered against them in a suit for damages for personal injuries brought in the Circuit Court of Tishomingo County by appellee, John Daniel Cochran.
Cochran alleged that he had been injured when a Vick Lumber Company truck, being driven by its employee, George, overturned in Tishomingo County.
All of the parties to the litigation, plaintiff and defendants, and nine of the ten witnesses who testified, resided at Hamilton, Alabama. The tenth witness was a doctor who saw Cochran shortly after the accident. The suit did not involve the interests or rights of any resident of Mississippi.
In his declaration, Cochran charged Vick with negligence in (1) overloading the truck, (2) using chains of insufficient strength to secure the load, and (3) furnishing weak and defective chains to secure the load. It was also alleged that Vick was liable as principal or master for the negligence of its employee, George, in the operation of the truck.
Cochran charged in his declaration that George had been negligent in the operation of the truck in that he, George, (1) drove it in excess of the speed limit of 50 miles per hour, (2) failed to decrease speed while negotiating a curve, (3) drove too fast under the circumstances, (4) failed to keep a proper lookout and (5) failed to keep his vehicle under control.
The trial court, however, submitted the case to the jury upon the questions of the alleged negligence of George in failing to decrease speed at the curve, driving too fast under the circumstances and failing to keep the vehicle under control.
As to Vick, the court sent the case to the jury only upon the charges that Vick had overloaded the truck and that Vick was liable for any negligence on the part of its employee, George, under the doctrine of respondeat superior.
At the outset, an objection was interposed to the jurisdiction of the trial court to entertain the suit under the circumstances. It was contended by defendants-appellants that the Mississippi nonresident motorist statute is limited in its application to those cases involving residents of Mississippi. In support of this position certain language of this Court is quoted from the opinion in Nationwide Mutual Insurance Co. v. Tillman, 249 Miss. 141, 161 So.2d 604 (Miss. 1964). In that case this Court said:
The basic purpose of this act, as this Court has heretofore repeatedly stated, is to subject to the jurisdiction of the Mississippi courts nonresidents who are concerned or involved in this operation of automobiles within this state and within the terms of the statutes applying, in order that its citizens may assert as against such persons any proper claims in the courts of this State. (Emphasis supplied). (249 Miss. at 162, 161 So.2d at 612).
Appellants also quote from Tanksley v. Dodge, 181 F.2d 925 (5th Cir.1950) wherein the Fifth Circuit Court of Appeals stated:
Statutes of general import similar to the Mississippi statute have been frequently before other Courts The precise language and context of the statutes vary from state to state. This has properly resulted in differing adjudications. We apply the Mississippi statute in light of the language of § 61, the statutory *245 context of the selection and the manifest purpose of the statute to subject nonresident users of the highways of Mississippi to the jurisdiction of the local court for the trial and possible enforcement of claims for damages asserted by local citizens. (Emphasis supplied). (181 F.2d at 927).
However, in neither of these cases was the issue presented to the Court for decision or actually decided.
Nor has the doctrine of forum non conveniens been adopted in Mississippi, although a persuasive argument can be made that the Mississippi nonresident motorist statute should not be used as a vehicle for bringing in a Mississippi court a case when the circumstances are such as those in the present case. Here, all of the parties and nine of ten witnesses reside in the neighbor state of Alabama. But the result would be the same if all of the parties lived in California or Alaska and the injury had occurred in Mississippi. It may be that further legislation in this area is indicated but, in its present form, the jurisdiction of the court is not restricted by the statute to suits by Mississippi residents.
It appears from an abstract of record filed by appellants, which is unchallenged by appellee, that on the occasion in question, Vick had dispatched a shipment of lumber by truck from its place of business at Hamilton, Alabama, to a destination in Missouri. George, an experienced interstate truck driver, and an employee of Vick, drove the truck. After the truck had been loaded at Hamilton, George drove to his uncle's home where he invited plaintiff, Cochran, his brother-in-law, to ride along with him on the trip "for company," telling him that he, George, would pay him for any lost wages and for his meals. He also told Cochran that he might help him, George, with anything that came up on the trip. The Vicks had no knowledge of any of this.
George proceeded from Hamilton with his brother-in-law, Cochran, as a passenger, and was passing through a corner of Tishomingo County, Mississippi, when the truck overturned and Cochran sustained the injury complained of. George testified that he himself received a blow on his head and that he remembers nothing whatsoever about the occurrence.
George knew that it was the rule of Vick Lumber Company that no riders were to be permitted to ride on its trucks. He also knew that the rules of the Interstate Commerce Commission forbade allowing persons to ride in trucks engaged in interstate hauling. As stated, the Vicks were totally unaware that Cochran was being taken along on the trip by his brother-in-law, George.
It is the contention of Vick Lumber Company that Cochran's choice of a Mississippi forum was the result of "forum shopping" and was for the purpose of avoiding the Alabama statute of limitations, under which Cochran's claim is barred, and to escape the effect of the Alabama "guest statute" which also would have precluded recovery. It is further contended that, notwithstanding the choice of a Mississippi forum, Alabama law, including the Alabama "guest statute," should be applied. It is pointed out that the declaration does not charge, nor does the proof show, that either George or Vick was guilty of willful or wanton conduct which resulted in the injury of Cochran, but both allegations and proof relate to charges of simple negligence.
In Mitchell v. Craft, 211 So.2d 509 (Miss. 1968), this Court expressly abandoned the old rule of the rigid application of the lex loci delicti and adopted a more flexible formula which comports more nearly with traditional notions of fair play and substantial practice. In Mitchell the Court dealt with a situation somewhat analogous to that reflected by the present record. The case involved choice of law *246 and conflict of laws problems in an action for damages for wrongful death which had resulted from an automobile collision in the State of Louisiana. All of the parties to the collision were residents and citizens of Mississippi.
Under Mississippi law, the comparative negligence statute would permit recovery, but under Louisiana law, where the old common law rule law obtained, contributory negligence was a bar. In applying the Mississippi comparative negligence statute, this Court stated:
We modify the previously existing rule in this jurisdiction, which applied invariably the law of the place of injury, and hold that under the factual situation existing in this case, the most substantial relationships of the parties and the dominant interest of the forum require application of Mississippi law... .
(211 So.2d at 510).
The Court observed:
[U]nder the center-of-gravity or most substantial relationship rule, the substantive law of Mississippi is applicable, since the place of accident was purely fortuitous, and the interest of Mississippi in both decedents, their estates, and their expectations of their rights under Mississippi law, including its comparative negligence statute, is dominant.
(211 So.2d at 512).
And further:
Louisiana's sole relationship with the occurrence is the purely adventitious circumstance that the collision happened there.
(211 So.2d at 513).
In the case now before the Court, the "center of gravity or of most substantial relationships" unquestionably is in Alabama, since the place of the accident was purely fortuitous and Mississippi's sole relation to the occurrence was, as was said in Mitchell, "purely adventitious." Not only do all of the parties, plaintiffs and defendant, and nine of the ten witnesses, reside at Hamilton, Alabama, but their status, and their relationships each with the other, were established under agreements, express or implied, arrived at in the State of Alabama. The interstate trip on which they were engaged began and was to end in the State of Alabama. The loading, securing and weighing of the shipment took place at Hamilton. We have concluded that Alabama law, including the Alabama "guest statute," should govern as to all aspects of the case excepting that (1) Mississippi rules of the road should apply to questions of alleged negligence in the actual driving of the truck and (2) the period of limitations, by ancient precedent, is governed by the law of the forum.
Mississippi Code Annotated section 15-1-65 (1972), provides that a cause of action arising in a foreign state or country, and which is barred by the laws of such state or country, shall be barred in Mississippi. Obviously, this statute does not apply to the present case. Although the claim here adventitiously "arose" in Mississippi, the claimant and the defendants all resided in the same Alabama community at the time of injury and have so resided since. Claimant might have brought his suit in the Alabama court at any time within the period of limitations allowed by Alabama law. It would seem that to require him to have done so would have been fairer, less expensive and disruptive and more convenient, and would not have imposed upon the time of the Mississippi court or upon the taxpayers of Tishomingo County.
The Alabama case of Brown v. Standard Casket Manufacturing Co., 234 Ala. 512, 175 So. 358 (1937) involved a suit for damages for personal injuries alleged to have been sustained in an automobile collision. At the time of his alleged injury, the *247 plaintiff had been riding in a vehicle belonging to Standard Casket Manufacturing Co. which was being operated by its servant or agent who had permitted her to ride with him. In approving the action of the trial court in granting the affirmative charge in favor of Standard Casket, the Alabama court stated.
It is obvious that the action of the trial court in giving the affirmative charge in favor of the defendant Standard Casket Manufacturing Company, at its request, proceeded upon the theory that the servant or agent of this defendant, in permitting the plaintiff to ride to Montgomery, Ala., in the car of said defendant, was acting beyond the scope and line of his employment; and that, therefore, the defendant Standard Casket Manufacturing Company owed the plaintiff no duty other than not to negligently injure her after its said agent or servant Arnold discovered her peril, or not to wantonly or willfully injure her in operating the automobile. The trial court was of the opinion that, under the evidence, the said defendant's agent, as a matter of law, was not guilty of either subsequent negligence, or of any willful or wanton misconduct. In this conclusion we concur.
......
There was no evidence in the case, until after the trial, tending, in the slightest degree, to show that the Standard Casket Manufacturing Company had any knowledge of, or had consented to, the arrangement made by plaintiff's husband with the said Arnold, its agent or servant, by which plaintiff was allowed to ride in the car of the Standard Casket Manufacturing Company to Montgomery.
......
Under the evidence, the court committed no error in giving the general affirmative charge for the defendant Standard Casket Manufacturing Company. (234 Ala. at 515-516, 175 So. at 360-361).
Nor is the effect of the above decision weakened or altered by the fact that a new trial was ordered on the grounds of newly discovered evidence, which was set forth in affidavit made by the Vice President of Standard Casket, and consisted of his sworn statement that its driver had been granted express permission by Standard Casket to transport the passenger.
Likewise in Harper v. Griffin Lumber Co., 250 Ala. 339, 34 So.2d 148 (1948), the Alabama court said:
It is to be noted that it is not alleged in the one count of the complaint that appellant's intestate was riding in the truck as a guest of the defendants, but merely that he was riding as a guest. Whether as a guest of the driver of the truck or of the defendants does not appear. On the other hand, charges 32 and 34 are specific to the effect that if he was shown not to be a guest of the defendants, appellant could not recover. Under the uncontroverted evidence, and the law as declared in our cases, the deceased Vines was a trespasser. Perry Supply Co. v. Brown, 221 Ala. 290, 128 So. 227; Jewel Tea Co. v. Sklivis, 231 Ala. 590, 165 So. 824.
The duty owed to a guest under section 95, Title 36, Code of 1940, is not to willfully or wantonly injure or kill him. The same measure of duty is owed to a trespasser. McGhee v. Birmingham News Co., 206 Ala. 487, 90 So. 492; Perry Supply Co. v. Brown, 221 Ala. 290, 128 So. 227.
(250 Ala. at 342, 34 So.2d at 150).
Here it is undisputed that George knew that it was the policy of Vick not to permit riders. He was also aware of the provisions of section 392.60 of Motor Carrier Safety Regulations (49 CFR § 192.60) of *248 the Interstate Commerce Commission regulations which provides:

Unauthorized persons not to be transported. Unless specifically authorized in writing to do so by the Motor Carrier under whose authority the motor vehicle is being operated, no driver shall transport any person or permit any person to be transported on any motor vehicle other than a bus. When such authorization is issued, it shall state the name of the person to be transported, the points where the transportation is to begin and end, and the date upon which such authority expires... .
The transportation of Cochran as a personal invitee of George, was against Vick's policy or rule and was contrary to specific regulations of the Interstate Commerce Commission. Cochran, therefore, as far as Vick was concerned, was a trespasser, and the duty owed him by Vick extended no further than to refrain from injuring him willfully or wantonly. No willful or wanton conduct contributing to Cochran's injury was alleged or proved. Under Alabama law, Cochran was not entitled to recover as against Vick.
Although Mississippi has no guest statute similar to that of Alabama, this Court arrived at a similar result in Mitchell v. Eagle Motor Lines, Inc., 228 Miss. 214, 87 So.2d 466 (1956). In that case, it appears that deceased, at the time of the collision which caused his death, was riding as a passenger in a truck belonging to Eagle Motor Lines and being operated by its driver. Eagle had no knowledge of this and had not consented thereto. It was Eagle's policy not to allow the transportation of riders. This Court, referring to the Interstate Commerce Commission regulation, quoted above, held that the rider was a trespasser as to Eagle, and the duty owed him extended no further than to refrain from willfully or wantonly injuring him. The Court said:
The lower court instructed the jury for Eagle that deceased was a trespasser and that Eagle owed him no duty except not to wilfully and wantonly injure him. Appellant assigns this as error.
The evidence is undisputed that Eagle did not give permission for the deceased to ride in the truck driven by Boatman, and that deceased was riding in the truck at the time of his death in violation of the rules of Eagle as to the operation of its trucks. Interstate Commerce Commission Safety Regulations, Rule 192.60, is as follows:
"Unauthorized persons not to be transported. Unless specifically authorized in writing to do so by the motor carrier under whose authority the motor vehicle is being operated, no driver shall transport any person or permit any person to be transported on any motor vehicle other than a bus. When such authorizaton is issued, it shall state the name of the person to be transported, the points where the transportation is to begin and end, and the date upon which such authority expires... ."
We hold that the deceased was a trespasser and the lower court properly instructed the jury to that effect. Yazoo & M.V.R. Co. v. Tatum, 174 Miss. 82, 163 So. 893; Southern United Ice Company v. Fowler, 185 Miss. 300, 187 So. 218; Watson v. Holeman, 169 Miss. 585, 153 So. 669; Thomas v. Hively, 196 Miss. 187, 16 So.2d 632.
(228 Miss. at 229-230, 87 So.2d at 471).
We hold, therefore, that the trial court should have granted the request of the Vicks for a peremptory instruction in their favor.
The case as between Cochran and A.C. George, Jr. is substantially different. George had invited his brother-in-law, Cochran, to accompany him for reasons personal to himself and had promised that he, George, would make certain reimbursements *249 to Cochran and Cochran would help him with anything that might "come up" on the trip. In this situation, as to George, Cochran was not a trespasser and proof of simple negligence on the part of George, which proximately contributed to Cochran's injury, was enough to require that the issue be submitted to the jury as to George.
George, because of what he said was a complete loss of memory, was unable to give an account of the accident. Cochran's version, although self-contradictory in some respects, was sufficient to take the case to the jury as to George on the question of his negligence in the operation of the truck.
The case, nevertheless, must be reversed and remanded as to George on the question of damages alone. Three doctors testified as to Cochran's injury. The two who first examined Cochran and who had the advantage of X-rays in making their examinations, concluded that Cochran's injury, consisting of a compression fracture of a vertebra, was slight or minor and that complete recovery could be expected. The third doctor, a Dr. Frederick, a general practitioner, took no X-rays. His sole treatment of Cochran consisted of giving him injections for pain. Dr. Frederick testified, contrary to the conclusions of the other two, that Cochran had been seventy percent permanently disabled.
Although Dr. Frederick had taken no X-rays, he testified, in his deposition, that he had examined some X-rays, not made by him or under his supervision. These X-rays were not produced, were never identified or proven or established in any permissible manner, and were neither in evidence nor offered in evidence. The trial court properly excluded from consideration by the jury that part of Dr. Frederick's deposition which dealt specifically with what he said these X-rays had reflected. It is clear, however, from Dr. Frederick's whole deposition, that these unidentified and unproven X-rays, not in evidence, formed, in substantial part, a basis for his opinion as to Cochran's injury. This is particularly significant in that Dr. Frederick's conclusions were materially at variance with the conclusions reached by the other two doctors. Under such circumstances it was error to permit Dr. Frederick's opinion to be placed before the jury.
In Wild v. Bass, 252 Miss. 615, 173 So.2d 647 (1965), this Court dealt with a somewhat similar question. The Court said:
Dr. Salatich's testimony was objectionable for other reasons. Although the court instructed him that he was not to use any information other than the history he had obtained and what he had learned from his own examination in his testimony as to the nature and extent of the injuries, it is apparent from the record that the doctor relied on X-rays and reports from other doctors. The X-rays were not in evidence and none of the other doctors whose reports he considered testified in the case. This becomes an important element in the case for the reason that Dr. Salatich testified that in his opinion appellee received a compression fracture of the fifth vertebra. However, the X-rays taken at the time Dr. Salatich made his examination did not show any such fracture. The only way that Dr. Salatich could have arrived at his conclusion that appellee suffered a fracture would have been facts gathered from other sources. He admitted he took as true what Mrs. Bass told him about the child being run over, and the history that she gave him of the child's actions from the date of the accident until the date of his examination. He also testified that he had reports and X-rays by other doctors which he considered reliable. As an expert he could consider testimony of other doctors properly in evidence and also the result of any X-rays properly in evidence, but he should not have been allowed to base his testimony *250 on reports of other doctors and X-rays not in evidence.
We have announced the rule that a medical expert may base an opinion partly on facts within his personal knowledge and partly on facts shown by evidence of other witnesses. Southern Farm Bureau Casualty Ins. Co. v. Jones, 236 Miss. 604, 111 So.2d 659 (1959); Mutual Life Ins. Co. of New York v. Rather, 221 Miss. 527, 73 So.2d 163 (1954). This is the proper rule, and a medical expert should not be allowed to base his opinion on matters not within his own knowledge and not in evidence in the case.
(252 Miss. at 627, 173 So.2d at 651).
Moreover, the trial court unduly restricted the cross-examination of Dr. Frederick.
In qualifying Dr. Frederick, he was examined by plaintiff's counsel in considerable detail as to his credentials as a doctor.
In answer to questions of plaintiff's counsel, Dr. Frederick testified, on direct examination, that he had practiced medicine continuously for forty years. On cross-examination, the trial court correctly permitted it to be developed that, as a matter of fact, Dr. Frederick had been indicted and had pled guilty in 1943 to a charge of "unlawfully, unknowingly and voluntarily and feloniously selling, and giving away and distributing a large quantity of morphine not made in pursuance of a written order on a form issued in blank by the Commissioner of Internal Revenue" and for not having paid the "special tax required of dealers in narcotic drugs." However, the trial court declined to permit it to be shown to the jury on cross-examination that, contrary to specific testimony given by Dr. Frederick on direct examination that he had practiced continuously for forty years, the fact was that he had been confined for nearly two of those years in the Federal Penitentiary in Lexington, Kentucky, and that again in 1939 and in 1942 he had been confined for alcoholism. The trial court further refused to allow cross-examination to show that Dr. Frederick's certificate of qualification to practice medicine in the State of Alabama had been revoked in 1952 for a period of one year. Plaintiff's counsel elicited from Dr. Frederick, by specific questions on direct examination, a statement from the doctor that he had not had any further trouble with alcoholism or narcotics since 1953, and had not been arrested or charged with any use of narcotics or alcohol since 1953.
Plaintiff's counsel put the matter in issue on direct examination of Dr. Frederick as follows:
Q. Have you been arrested or been charged with any use of narcotics or alcohol since 1953?
A. No sir.
The doctor's answer was unequivocal but less than frank.
The trial court refused to allow the jury to hear cross-examination of Dr. Frederick to show the untruthfulness of his statements by showing Dr. Frederick in fact and contrary to his sworn answer, had been indicted by the grand jury upon a narcotics charge, the doctor having said of the particular charge "we beat that case."
In addition to the general rule of liberality allowed on cross-examination, sanction has never been accorded to a rule that would allow a witness to make false statements on direct examination secure in the knowledge that they could not be called in question on cross-examination. Where a false statement is given on direct examination which is relevant and material to the inquiry, the falsity of the statement may be shown on cross-examination. In this case the answers were given in the course of establishing the professional character and experience of the witness. The issue was deliberately injected by plaintiff as to whether, since his earlier conviction of dealing in narcotics, he had ever been "charged" again. He should not, *251 with impunity, be permitted to answer falsely "no."
The general rule in Mississippi is that the general credibility of a witness may be impeached on cross-examination by showing that he has been convicted of a crime and this is without regard to whether it can be shown that the witness testified falsely as to any fact. Under this rule, the general credibility of a witness may not be impeached by a mere showing that the witness has been charged with, but not convicted, of an offense. But the rule relating to the impeachment of the general credibility of a witness by showing his conviction of a crime, is not to be confused with the rule that a witness may be contradicted by showing, on cross-examination, that he has sworn falsely on direct examination to specific facts which are relevant and material to the inquiry. In the case here, Dr. Frederick, a general practitioner, was examined at length by plaintiff's counsel for the purpose of establishing his character and credentials so as to enhance the likelihood that his testimony would be believed.
It was error to permit plaintiff to build up Dr. Frederick in the presence of the jury on direct examination and allow the latter's false assertions to stand uncontradicted and their falsity unrevealed to the jury by proper cross-examination.
In Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), the United States Supreme Court considered a case in which an accused, on his direct examination, had testified that he had never had in his possession or sold any narcotics to anyone in his life. On cross-examination, in reference to that testimony, he again asserted that he had never purchased, sold or possessed any narcotics, and denied that Federal agents had seized narcotics from his home prior to the trial. The Government in putting on its case, put on evidence that narcotics had, in fact, been seized from the home of the accused, contradicting the testimony of the accused. On appeal, complaint was made that the seizure of the narcotics by the narcotics agents had been unlawful and any reference to it was inadmissible under the doctrine of Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). Justice Frankfurter, speaking for the Court, said:
It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths. Such an extension of the Weeks doctrine would be a perversion of the Fourth Amendment.
Take the present situation. Of his own accord, the defendant went beyond a mere denial of complicity in the crimes of which he was charged and made the sweeping claim that he had never dealt in or possessed any narcotics. Of course, the Constitution guarantees a defendant the fullest opportunity to meet the accusation against him. He must be free to deny all the elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal evidence illegally secured by it, and therefore not available for its case in chief. Beyond that, however, there is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility. (347 U.S. at 65, 74 S.Ct. at 356).
See also United States v. Colletti, 245 F.2d 781 (2nd Cir.1957).
Dr. Frederick's deposition as to his opinion of the extent, character and duration of Cochran's injury should not have been admitted, having been based in substantial *252 part on X-rays not identified or in evidence. Moreover, the cross-examination of this witness was unduly restricted so that revelation to the jury of the falsity of his statements was prevented.
For the reasons stated, the case will be reversed and judgment entered here for W.T. Vick and Alfred Vick, individually and as partners, trading as W.T. Vick Lumber Company. As to A.C. George, Jr., only, the judgment will be affirmed as to liability and the case will be reversed and remanded for a new trial upon the question of damages alone.
Reversed and judgment entered here for W.T. Vick and Alfred Vick, individually and as partners trading as W.T. Vick Lumber Company. As to A.C. George Jr., only, judgment is affirmed as to liability and case is reversed and remanded for a new trial upon question of damages alone.
GILLESPIE, C.J., RODGERS, P.J., and INZER, ROBERTSON, SUGG and WALKER, JJ., concur.